Mary M. JONES and Floyd Jones, husband and wife, Plaintiffs,

v.

William H. PHILPOTT, M.D., and Philpott Medical Center, Inc., Defendants.

Civ. A. No. 87–1703.

United States District Court, W.D. Pennsylvania.

May 10, 1989.

See also 702 F.Supp. 1210.

Stanley W. Greenfield, Pittsburgh, Pa., for plaintiffs.

David A. Damico, Pittsburgh, Pa., for defendants.

## MEMORANDUM AND ORDER

SMITH, District Judge.

Before the Court at this time in this medical malpractice action is the Motion for Summary Judgment filed by defendants William H. Philpott, M.D., ("Philpott") and Philpott Medical Center, Inc. ("PMC"). Defendants assert that plaintiffs commenced their action for damages resulting from negligent treatment of Mary M. Jones ("Jones") beyond the two year statute of limitations period established by 42 Pa.C.S. § 5524.[1]

The record contains no issue of material fact that Philpott's treatment was at least ineffective, and at worst quackery. The record likewise contains no disputed issue of material fact, however, that plaintiffs[2] commenced their action after the limitations period had run. We are therefore constrained to grant defendants' motion.

The matter resolves itself into an application of Pennsylvania's discovery rule, see *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788

(1959), to a narrow question: does the discovery rule suspend the running of the statute of limitations if the plaintiff is aware of an injury caused by the defendant's conduct but is unaware of the full extent of that injury?

Mary M. Jones, a registered nurse licensed in Pennsylvania since 1954, was suffering in later 1982 and early 1983 from depression, insomnia, memory loss, and anxiety. Her physician referred her to a psychiatrist who prescribed an anti-anxiety agent, Ativan. Later in 1983, Jones consulted with a Doctor Roy Kerry of Sharon, Pennsylvania, who diagnosed her as suffering from numerous allergies and an ear infection. Kerry gave Jones the name of a doctor who performed allergy testing, defendant Philpott, together with a reference letter.

Jones went to Florida and was a patient of defendant Philpott at the Harborside Hospital in St. Petersburg, Florida, from July 13, 1983, to August 13, 1983, and was treated as an outpatient for two weeks at the Philpott Medical Center. Philpott informed Jones that she was suffering from numerous "brain allergies" to foods, petrochemicals, caffeine, formaldehyde, and carpeting, and that she was suffering from reversible liver damage. Philpott discontinued Jones' use of Ativan, causing Jones to undergo what she alleges were withdrawal symptoms, and put her on a regimen of megavitamins and a restrictive diet which caused Jones to drop from a weight of approximately 112 pounds to 104 pounds.

Informing Jones that she exhibited symptoms of diabetes, Philpott prescribed insulin. Philpott also had Jones undergo what he described as Sedac therapy, a combination of subconvulsive electroshock therapy, sedatives, and "orientation response interference of verbally-cued responses" in order to cure Jones' depression and anxiety.

---

**1.** Both parties assume Pennsylvania's law to be controlling. We agree that Pennsylvania choice of law rules would dictate application of Pennsylvania's statute of limitations because of that state's substantial interest in controlling procedural rules of decision in cases commenced in

its courts, despite the occurrence in Florida of the acts constituting malpractice.

**2.** "Plaintiffs" throughout will refer to both Mary Jones and her husband, who brings a strictly derivative consortium claim; "Jones" refers to Mary Jones.

Jones further alleges that she was subjected to convulsive electroshock therapy.

Following the insulin and electroshock therapy, Jones experienced a noticeable memory loss. Philpott told her this was an expected and temporary side effect. Philpott arranged, upon Jones' discharge, for her to continue telephone consultations with him and advised her not to consult with other physicians concerning her condition.

In early September 1983, Jones met a former employer, Dr. Jean Braun, a dermatologist. When Jones related the history of her treatment at Philpott's hands, Braun referred her to several local specialists for care, and sent a letter on September 19, 1983, to the Pinellas County Medical Society addressing the medical and ethical lapses she perceived in Philpott's methods. On advice of former counsel, Jones discontinued all treatment with Philpott by September 28, 1983, but continued to write letters cancelling telephone consultations with him through the fall of 1983, so as not to "tip [her] hand that something is happening." Jones deposition, p. 186. No later than October 1983, Jones had lost all faith that Philpott's treatment had been proper, and began consulting with doctors, as well as with former counsel.

The discovery rule provides that the statute of limitations does not begin to run in a medical malpractice case until the injured party knows or through the exercise of reasonable diligence should know that (1) she is injured; (2) the defendant is the operative cause of her injury; and (3) there is a causal relationship between the conduct of the defendant and the injury. *Citsay v. Reich*, 380 Pa.Super. 366, 551 A.2d 1096, 1098 (1988). More generally, the discovery rule relieves a party from the strictly mechanical time limits imposed by the legislature for bringing suit for the period of time that an injury or its cause remains hidden, but it does not excuse mere lack of knowledge, mistake, or misunderstanding. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983). Therefore, it is not grounds for tolling of the statute that an injured person is aware of an injury caused by another, but is unaware that the injury is, legally, negligence. *DeMartino v. Albert Einstein Medical Center*, 313 Pa.Super. 492, 460 A.2d 295 (1983).

Nor is it grounds for tolling of the statute that an injured person is aware of an injury from conduct of another, but mistakes the precise manner in which the injury occurred. *Held v. Neft*, 352 Pa.Super. 195, 507 A.2d 839 (1986). In *Held*, the plaintiff alleged that she suffered weakness in her left arm resulting from negligent placement of an intravenous line in her hand during surgery in December, 1979. The plaintiff therein was told that the post operative pain was normal and a consequence of repeated needle insertions. After leaving defendant's care in May, 1980, Held took no action because the pain and swelling subsided. In 1982, however, she allegedly learned that the intravenous solution may have been improper and the cause of her injuries. The Court held that her lack of knowledge of the precise operative cause of her injury did not excuse her failure to take action. The plaintiff, despite the advice of the defendant doctor that her side effect was normal, was not excused from instituting timely suit where she knew that she had been injured, and she knew the defendant's actions were its cause.

■ Plaintiffs argue that the statute is tolled for two reasons: (1) that Philpott told her that some temporary memory loss was expected, and (2) that her severe memory loss was not discoverable until Jones' psychiatric depression was treated, allowing the cause of the memory loss to be pinpointed. Pennsylvania law disposes of the first contention, however; Jones' own conduct disposes of the second.

Philpott's statement to Jones that her memory loss was expected and temporary is not the sort of fraudulent concealment that would equitably toll the statute of limitations. *Citsay v. Reich*, supra, 551 A.2d at 1098–99; *Held v. Neft*, supra, 507 A.2d at 842–43. This is so even if Philpott's letter advising Jones that any memory loss should be subsiding, written in Sep-

 

tember 14, 1983, is discounted. *Held v. Neft* and *Citsay v. Reich* clearly state that this sort of assurance by a negligent doctor cannot be used as an excuse to delay investigation when the patient leaves the doctors' care and has lost confidence in the course of treatment prescribed. See also *Reilly v. United States*, 513 F.2d 147 (8th Cir.1975) (same principle applies in federal common law under Federal Tort Claims Act). *A fortiori*, therefore, when a patient such as plaintiff Jones not only leaves the care of defendant Philpott because of doubts about the quality of his care, and actually seeks professional medical and legal advice, she may not claim that his reassurances lulled her into inaction. See Jones depo., p. 194.

■ Plaintiffs' second argument is that Jones' psychiatric depression, which preceded her treatment in Florida, masked any discovery of the long term memory loss until 1986, when a neurologist diagnosed her condition as stemming from Philpott's inappropriate insulin therapy. Jones testified, however, that she was aware of a worsening of her memory loss upon her return from Florida, Jones depo. p. 103–105, and suspected even before seeing any other doctor, that Philpott's treatments were harmful and inappropriate. Id. p. 194; see also id., p. 54. ("I remember calling many members of my family and begging them to come and take me out of there.")

Jones cannot distinguish between one memory loss and another simply on the basis that she now believes it to be permanent. Pennsylvania law will not allow her to suspend the filing of suit until all of the harmful results of Philpott's negligence manifest themselves. To hold otherwise would create a concept which permitted a plaintiff a new statute of limitations period each time a change in condition arose, regardless of the date of the negligence. As the court held in *Shadle v. Pearce*, 287 Pa.Super. 436, 430 A.2d 683 (1981), we hold that the plaintiff must file suit within two years of the discovery of the *first* injury caused, not the injury for which suit is brought. An appropriate order will be entered.

### ORDER

AND NOW, this 10th day of May, 1989, consistent with the foregoing, summary judgment is entered in favor of defendants Philpott and Philpott Medical Center, Inc. The Clerk is directed to mark this matter closed.