**Richard deY. MANNING, Plaintiff,**

**v.**

**John J. MALONEY, et al., Defendants.**

**No. 3:CV–90–850.**

United States District Court,
M.D. Pennsylvania.

Feb. 26, 1992.

Richard deY. Manning, pro se.

Thomas M. Kittredge, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiff Richard deY. Manning filed this SEA action[1] to recoup financial losses caused by defendants' alleged negligence and fraud in inducing plaintiff to purchase Public Service of New Hampshire ("PSNH") corporate bonds. Plaintiff purchased the PSNH bonds on the recommendation of Frederick M. Fair, an employee of the brokerage firm of Thomson & McKinnon Securities, Inc. ("Thomson"). He brings this action[2] against the officers and

---

1. The Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

2. This is the third action Manning has filed to recoup losses resulting from the May, 1987 PSNH bond purchase. (See: Record Document No. 8, filed December 3, 1991, pp. 1–2). The first, filed against Thomson in the United States District Court for the Middle District of Pennsylvania on March 7, 1988 (Civil No. 88–348) was stayed on March 18, 1990 when Thomson filed a Chapter 11 petition in bankruptcy (*In re Thomson McKinnon Securities, Inc.,* 120 B.R. 301 (Bkrtcy.S.D.N.Y.1990)).

The first action which Manning filed was assigned initially to the Honorable William J. Nealon, United States District Judge, and subsequently reassigned to this judge on May 14, 1990 (Record Document No. 45, filed May 14, 1991 to Civil No. 88–348).

Manning successfully pursued a claim in bankruptcy court against Thomson and was awarded $210,625.00 on March 27, 1991. Thomson appealed the bankruptcy court judgment and ultimately settled with Manning for $200,000.00. (See: Record Document No. 9, filed December 3, 1991, Exhibit "E") The "Stipu-

lation of Settlement Agreement and Order" which Manning and Thomson executed in settlement of his bankruptcy court claim states, in relevant part:

... TMSI [Thomson] and Manning agree as follows:

....

2. TMSI agrees to the allowance of Manning's Proof of Claim, as amended, as a general unsecured claim in the amount of $200,000.00.

3. It is understood that TMSI's agreement to allow Manning's Proof of Claim, as amended, in the agreed claim amount of $200,000.00, determines the amount of Manning's claim against TMSI but does not guarantee that Manning will actually receive that amount upon the distribution of TMSI's assets....

4. Manning agrees that the ... allowance of his Proof of Claim, as amended, is in full satisfaction of all of his claims against TMSI ... Manning and TMSI hereby release and forever discharge each other and all of their respective ... officers, directors ... agents ... of and from any and all debts, demands, actions, causes of action, claims, rights, liabilities ... whatsoever both at law and in equity,

directors of Thomson, whom he alleges are "controlling persons" under SEA section 20.[3] (Record Document No. 1, filed May 2, 1990, para. 5).

Manning purchased the PSNH bonds May 11, 1987 on a thirty percent margin at a total cost of $848,837.00.[4] Within weeks of his purchase, the price began to decline. On the recommendation of Thomson, Manning did not sell the bonds at that time, and held them for several months, during which time their value declined steadily. Manning eventually sold the bonds over a period of several months at a total loss of $210,652.00. He sold the last of the bonds on December 3, 1987.

Plaintiff alleges that Thomson negligently and/or fraudulently failed to disclose to him before the bond purchase the fact that PSNH was undergoing significant financing difficulties and that had he been fairly apprised of this information, he would not have made the purchase.

In this action, plaintiff asserts five causes of action against the officers and directors of Thomson: (1) violation of SEA section 10(b)[5] and Rule 10b–5; (2) violation of the Rules of the New York Stock Exchange ("NYSE") and the internal operating rules of Thomson; (3) "gross and wanton negligence"; (4) negligence *per se;* and (5) "failure to exercise ordinary care." (Record Document No. 1, filed May 2, 1990).

Before the court is a Rule 12(b)(6) motion (Record Document No. 3, filed October 31, 1991) filed by defendants. Defendants move for dismissal on four grounds: (1) violations of SEA section 10(b) and Rule 10b–5 are barred by the one-year statute of limitations applicable to such claims; (2)

plaintiff's claim for violations of NYSE Rules and internal operating procedures fails to state a claim upon which relief can be granted; (3) plaintiff's three negligence claims are barred by the two-year statute of limitations applicable to such claims; and (4) all plaintiff's claims are barred res judicata. (Record Document No. 3, filed October 31, 1991) Because we find three of defendants' arguments dispositive, we do not consider all four. We find that no private cause of action exists for violation of the NYSE rules or the internal operation procedures of the brokerage firm. We further find that all other claims plaintiff asserts are barred by the applicable statutes of limitations and will dismiss this action with prejudice on those grounds. In his response to defendants' motion, plaintiff requests Rule 11 sanctions for the filing of the Rule 12(b)(6) motion. Plaintiff's motion will be denied.

## DISCUSSION

### Rule 12(b)(6) motion

The standards for ruling on a Rule 12(b)(6) motion are well-established. A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept all material allegations in the complaint as true and construe them in the light most favorable to the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Johnsrud v. Carter*, 620 F.2d 29 (3d Cir.1980); and *Truhe v. Rupell*,

---

which Manning and TMSI ever had ... This release does not apply to claims that Manning has asserted against individuals in the action filed in the United States District Court for the Middle District of Pennsylvania captioned *Richard deY. Manning v. Maloney et al.,* 3:CV–90–850....

**3.** 15 U.S.C. § 78t provides, in relevant part:
(a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such

controlled person to any person to whom such controlled person is liable, unless the controlling person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

**4.** Plaintiff also purchased Quanex Corporation bonds through Fair, and on Fair's recommendation, at or about the same time, but has no complaint about that transaction. (Record Document No. 1, filed May 2, 1990, para. 18).

**5.** 15 U.S.C. § 78j(b) (1988).

641 F.Supp. 57, 58 (M.D.Pa.1985)· (Rambo, J.). Although the complaint is to be liberally construed in favor of the plaintiff (See: Fed.R.Civ. 8(f)), the court does not have to accept every allegation it contains as true. Conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true. *Conley, supra*, 355 U.S. at 45–46, 78 S.Ct. at 101–102.

### Violation of NYSE Rules

■ No cause of action exists for the violation of NYSE Rules or non-compliance with brokerage firm internal operating procedures. *Bloch v. Prudential–Bache Securities*, 707 F.Supp. 189, 195 (W.D.Pa. 1989), ("It seems well settled that no direct cause of action exists for violations of self-regulatory organizations such as the NYSE or NASD."); *Binkley v. Sheaffer*, 609 F.Supp. 601, 603 (E.D.Pa.1985); and *Witt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 602 F.Supp. 867, 869 (W.D.Pa.1985).

It is clear that plaintiff "can prove no set of facts" in support of his claim which could entitle him to relief on this claim. *Conley, supra*, 355 U.S. at 45–46, 78 S.Ct. at 101–102. Plaintiff's claim for the violation of NYSE Rules and internal operating procedures will, therefore, be dismissed.

### Statute of limitations

■ Different statutes of limitations apply to plaintiff's several causes of action. Claims alleging an SEA violation under section 10(b) must be filed within one year of the discovery of the facts constituting the violation and within three years of the violation. 15 U.S.C. § 77m; *Lampf, Pleva, Lipkind, Prupis & Pettigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 2781–82, 115 L.Ed.2d 321 (1991). This rule has been followed by the Third Circuit since 1988. *In re Data Access Systems Securities Litigation*, 843 F.2d 1537, 1550 (3d Cir.), (en banc), *cert. denied, sub nom., Vitiello v. I. Kahlowsky & Co.*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988), ("[W]e have decided that the proper period of limitations for a complaint charging violation of section 10(b) and Rule 10b–5 is one year after the plaintiff discovers the facts constituting the violation, and in no event

more than three years after such violation.") Even if this had not been the law of the Third Circuit prior to the Supreme Court decision in *Lampf, supra*, the limitations periods it established are retroactive and apply to "all cases not finally adjudicated on the date when *Lampf* was decided." *Welch v. Cadre Capital*, 946 F.2d 185, 188 (3d Cir.1991). Accord: *Boudreau v. Deloitte, Haskins & Sells*, 942 F.2d 497, 498 (8th Cir.1991).

■ Equitable tolling under the doctrine of fraudulent concealment does not apply to SEA actions. The one-year "discovery rule" is the statutory counter-part of the common law doctrine of fraudulent concealment, meaning that the running of both statutes of limitations is triggered by identical considerations: the date on which the plaintiff discovered, or reasonably should have discovered, the violation. *Lampf, supra*, 111 S.Ct. at 2781 ("[I]t is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1–and–3–year structure. The 1–year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary.") Cf. *Anixter v. Home–Stake Production Company*, 939 F.2d 1420, 1435 (10th Cir.1991), quoting *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1395 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991), ("'Courts say that equitable tolling does not apply under § 13, but this is not strictly accurate. It is better to say that equitable tolling and related doctrines do not extend the period of limitations by more than the two-year grace period § 13 allows. Congress did not obliterate these valuable doctrines so much as it set bounds on the length of delay.'")

■ Actions filed beyond the one-year statute of limitations must be dismissed as untimely. "'Section 13 is substantive, rather than procedural; it establishe[s] an essential ingredient to a private cause of action' ... Thus, an untimely complaint must be dismissed as a matter of law." *Anixter, supra*, 939 F.2d at 1434.

■ Plaintiff's negligence claims are governed by Pennsylvania's two-year statute of limitations.[6] 42 Pa.C.S.A. § 5524(7). A cause of action in negligence arises on the date of the alleged act or omission or on the date plaintiff discovers, or reasonably should have discovered, the harm he has suffered if it is not immediately apparent. *School District of the Borough of Aliquippa v. Maryland Casualty Co.*, 402 Pa.Super. 569, 587 A.2d 765, 770–71 (1991). In *Pocono International Raceway, Inc. v. Pocono Produce Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983), the Pennsylvania Supreme Court described the application of the statute and exceptions to it:

... [T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations ... (Citation omitted.) ... even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy ... Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute.

The 'discovery rule' is such an exception, and arises from the *inability* of the injured, *despite the exercise of due diligence*, to know of the injury or its cause.... The salient point giving rise to the equitable application of the exception of the discovery rule is the inability, despite the exercise of diligence by the plaintiff, to know of the injury. A court presented with an assertion of applicability of the 'discovery rule' must, before applying the exception of the rule, address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action.

See also: *Jones v. Philpott*, 713 F.Supp. 844, 846 (W.D.Pa.), *aff'd per curiam*, 891 F.2d 281 (3d Cir.1989).

In *Molineux v. Reed*, 516 Pa. 398, 532 A.2d 792, 794 (1987), the Pennsylvania Supreme Court described another exception to the statute of limitations, fraudulent concealment, stating:

Where, 'through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry,' the defendant is estopped from invoking the bar of the statute of limitations.... (Citation omitted.)... [D]efendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient ... (Citations omitted.).... Mere mistake, misunderstanding or lack of knowledge is insufficient however ... and the burden of proving such fraud or concealment, by evidence which is clear, precise, and convincing, is upon the asserting party.

See also: *Levenson v. Souser*, 384 Pa.Super. 132, 557 A.2d 1081, 1089, *alloc. denied*, 524 Pa. 621, 571 A.2d 383 (1989).

*Untimely filing of plaintiff's action*

■ This action was unquestionably filed more than one year after Manning discovered that he stood to withstand a substantial financial loss as a result of purchasing the PSNH bonds and of Fair's alleged negligence in recommending the purchase without first making an adequate investigation as to their soundness and suitability for plaintiff's stated purposes. The material dates are not in dispute. Plaintiff alleges: (1) that he purchased the PSNH bonds on May 11, 1987; (2) that the value of the bonds began declining almost immediately due to the precarious financial situation of PSNH;[7] (3) that plaintiff became aware of

6. Both sides tacitly assume that Pennsylvania law applies. We have no reason to question that assumption and will apply the Pennsylvania statute of limitations. See generally: *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964).

7. Plaintiff alleges, *inter alia,* that:

23(b) PSNH was then [in May, 1987] attempting to obtain $100 million in new financing which was essential for its continued operations; said financing was scheduled to close on May 13, 1987, only two days from the date the PSNH Bonds were recommended by Thomson and purchased by plaintiff.

....

PSNH's financial woes shortly after he made the purchase; (4) that despite his growing concern about the increasingly precarious financial position of PSNH, he retained the bonds for several months on Thomson's recommendation;[8] (5) that he began selling the PSNH bonds on July 1, 1987[9] and sold the last of them on December 3, 1987;[10] and (6) that he lost a total of $210,652.00 on the entire transaction.[11] He further alleges that he was aware of Fair's breach of his alleged responsibilities by October, 1988, stating:

> 42. ... [I]n October, 1988, plaintiff learned that Fair had never:
>
> (a) had any discussion with the Thomson Bond Department concerning the proposed investment by plaintiff;
>
> (b) made any investigation as to the suitability of the PSNH Bonds for

plaintiff or of the strategy proposed by Fair for the investment by plaintiff;

> (c) discussed the proposed investment by plaintiff or the strategy proposed by Thomson for the investment by plaintiff.

(Record Document No. 1, filed May 2, 1990, para. 42). Apart from plaintiff's admission, he was clearly aware of the facts giving rise to a claim against Thomson even earlier. Plaintiff filed the first action in this trilogy, the action against Thomson, on March 7, 1988.[12]

Plaintiff's claims in this action are asserted against the controlling persons of Thomson, its officers and directors. Thus, the same facts which gave rise to an action against Thomson give rise to his claims against its officers and directors. These allegations, the failure to investigate the

---

23(f) PSNH had been seeking a rate increase, which was essential for its continued operations, which rate increase had been placed into effect under bond in January, 1987, and subject to refund, that a hearing thereon was set for July, 1987.

....

24. On May, [sic] 14, 1987, the PSNH stockholders meeting was held. On that day, according to information later supplied to plaintiff by Thomson, a rumor was circulated to the effect that the then pending financing negotiations had not been successful. As a result, the closing price of the PSNH Bonds was at or about 87, reflecting a 'paper loss' to plaintiff of over $80,000.00.

25. When plaintiff learned of the closing price, which was late in the evening of May 14, 1987, plaintiff telephoned Fair ... and Fair told plaintiff of the rumor and also told plaintiff that the rumor was the cause of the price decline. Plaintiff asked Fair why plaintiff had not been told that there was a negotiation pending for an uncompleted financing. Fair's response was 'Because I didn't know it.' That is, the Thomson's [sic] Bond Department had not informed Fair of that highly material fact relating to PSNH.

(Record Document No. 1, filed May 2, 1990, paras. 23–25).

8. Record Document No. 1, filed May 2, 1990, paras. 26–27, and 32.

9. Record Document No. 1, filed May 2, 1990, para. 34.

10. Record Document No. 1, filed May 2, 1990, paras. 34–39.

11. Record Document No. 1, filed May 2, 1990, para. 40.

12. An argument could be made that Manning was aware of the material facts giving rise to potential liability on the part of Thomson officers and directors even earlier. Manning urges the court to adopt, as *res judicata*, the findings of the bankruptcy court. (See: Record Document No. 8, filed December 3, 1991, pp. 1 and 15–17). Judge Schwartzberg found, *inter alia*, that:

> 36. In his letter to the debtor, dated June 9, 1983 [sic], Manning stated his complaint in the following relevant language:
>
> My 'beef' is this: I, *as an experienced high risk investor*, know that up to date information is the key to success. Such investments must be watched closely, any event which could impact the market must be known and thought out.
>
> Why, then, wasn't I told of the impending stockholder's meeting and the not yet completed financing? While I would expect that internally the story will be that Fred was told of those events, my long experience with him, and his habit of many years of telling me everything he could glean about a prospective investment, tells me that he was never told of either of such impending events.

(Record Document No. 3, filed October 31, 1991). While we do not hold that plaintiff is bound by the language quoted, the inclusion of such language in findings *plaintiff* urges the court to adopt is worth noting.

We assume that Judge Schwartzberg's reference to the letter as dated "June 9, 1983" is a typographical error. We assume that the reference is to a letter written by plaintiff to Thomson in June, 1987.

suitability of the PSNH bonds as an investment suited to plaintiff's stated needs, or the deliberate concealment of such information, constitute the gravamen of his claims against Thomson. (See: Record Document No. 1, filed May 2, 1990, paras. 43 and 44). By his own allegations, plaintiff was aware of these facts by October, 1988, the date on which the statute of limitations, therefore, began to run. Plaintiff did not file this action until May 2, 1990, more than one year after he became aware of the facts constituting the alleged SEA violation. His SEA claim is therefore barred by the statute of limitations.

 This action was also filed more than two years year after the statute began to run on plaintiff's negligence claims. Plaintiff purchased the PSNH bonds on May 11, 1987 and unquestionably knew of the facts giving rise to his cause of action by March 7, 1988, at the latest. He did not file this action until May 2, 1990, approximately two months after the negligence statute of limitations expired. His negligence claims are, therefore, time-barred.

 Under the facts plaintiff has pled, tolling does not apply. The two-year statute began to run on the date plaintiff became aware that he had suffered harm as a result of his purchase of the PSNH bonds. His injury was not hidden, so the discovery rule does not apply. The fact that what he deems a significant piece of evidence, i.e. that Thomson's research department had in its files documents detailing the precarious financial situation of PSNH which it failed to disclose to plaintiff, does not operate to toll the statute. See generally: *Jones, supra,* 713 F.Supp. at 846. ("[I]t is not grounds for tolling of the statute that an injured person is aware of an injury caused by another, but is unaware that the injury is, legally, negligence.... (Citation omitted).... Nor is it grounds for tolling of the statute that an injured person is aware of an injury from the conduct of another, but mistakes the precise manner in which the injury occurred."). Plaintiff himself characterizes the information defendants allegedly concealed as evidence. In his response to defendants' motion, he states:

> TMSI [Thomson] and its counsel ... carefully and intentionally concealed the source of the Unidentified Page, as it would have disclosed the most damming [sic] piece of evidence possible.
>
> .... Manning did not discover the source of the Unidentified Page until March 18, 1991 ...
>
> That is the most relevant date from the point of view of any Statute of Limitations.

(Record Document No. 8, filed December 3, 1991, p. 18 n. 7. Emphasis original.) Plaintiff is incorrect. The date key evidence was discovered against the defendants has no bearing on the running or the tolling of the statute of limitations. The key date was the date plaintiff knew, or reasonably should have known, that he had a cause of action against the defendants, and that date was more than two years prior to the commencement of this action.

*Request for sanctions*

 The only remaining matter is plaintiff's request for rule 11 sanctions. Rule 11[13] provides for the imposition of sanctions against counsel or parties acting *pro*

**13.** Rule 11 provides, in relevant part:
Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name ... A party who is not represented by an attorney shall sign the party's pleading, motion or other paper ... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper, that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation..... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

*se* if the court finds that pleadings or other papers signed by the counsel or the party are " 'frivolous, legally unreasonable or without factual foundation, even though ... not filed in subjective bad faith.' " *Baxter v. A.T. & T. Communications*, Civil No. 88–471, slip op. at 3 (D.N.J. Sept. 5, 1989) (available on WESTLAW at 1989 WL 121058), quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir.1986). The rule serves as a warning to counsel and parties alike that before filing a document, "they must 'Stop, Look and Listen' or as this circuit phrased it, 'Stop, Think, Investigate and Research.' " *Baxter, supra*, slip op. at 3, quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479 482 (3d Cir.1987). Accord: *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 503–05 (3d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) and *Gaiardo, supra*, 835 F.2d at 483. The arguments raised in defendants' motion are well taken, and do not warrant the imposition of sanctions against them.

## ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. Defendants' Rule 12(b)(6) motion (Record Document No. 3, filed October 31, 1991) is granted.

2. Plaintiff's complaint is dismissed with prejudice.

3. Plaintiff's request for Rule 11 sanctions is denied.

4. The Clerk of Court is directed to close this file.