Sharon **ROHRBACH**, et al., Plaintiffs,

v.

**AT & T NASSAU METALS CORP.,** et al., Defendants.

No. 3:CV–89–1268.

United States District Court, M.D. Pennsylvania.

June 21, 1994.

---

Robert J. Sugarman, Sugarman & Associates, Philadelphia, PA, for plaintiffs.

Stephen G. Morrison, Richard H. Willis, John S. Williams, Joseph M. Melchers, Nelson Mullins Riley & Scarborough, L.L.P., Columbia, SC, Cody H. Brooks, James J. Wilson, Kreder, Brooks, Hailstone & Ludwig, Scranton, PA, for defendants.

### MEMORANDUM (# 2)

McCLURE, District Judge.

### BACKGROUND:

This is an environmental contamination case filed August 31, 1989 in which ten individual plaintiffs have asserted claims against defendants American Telephone and Telegraph Company (AT & T); AT & T Nassau Metals Corp. (AT & T Nassau); Lurgan Corporation (Lurgan); Joseph Brenner and C & D Recycling, Inc. (C & D Recycling). Lurgan operated a recycling center adjacent to plaintiffs' properties in Foster Township, Luzerne County, Pennsylvania from 1966 through 1978. In 1978, the facility was sold to C & D Recycling, which operated it until 1984, when all operations ceased. The property was the site of a clean-up effort spearheaded by the Environmental Protection Agency (EPA).

During the years it was in operation, the facility's primary function was reclaiming materials (primarily lead and copper) from coated telephone cable supplied by AT & T. This was done pursuant to consignment contracts with an AT & T subsidiary.

Plaintiffs allege federal causes of action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 *et seq.* (CERCLA) (Count I) and the Racketeer Influenced and Corrupt Organizations Act, (RICO) 18 U.S.C. §§ 1961 *et seq.* (Counts III, IV and V), as well as pendent state claims under the Pennsylvania Hazardous Sites Cleanup Act (PaHSCA), Pa.Stat.Ann., tit. 35, §§ 6020.101 to 6020.1305 (Supp.1992), (Count II) and for negligence (Count VI),[1] strict liability (Count VII), nuisance (Count VIII), trespass (Count IX), intentional infliction of mental and emotional distress and injury (Count X), and negligent infliction of mental and emotional distress and injury (Count XI).[2]

Before the court is the motion by AT & T and AT & T Nassau for partial summary judgment against all adult plaintiffs on the state-law claims. Movants contend that the state-law claims should be dismissed as time-barred. (Since the motion seeks partial summary judgment against only the adult plaintiffs, "plaintiffs" as used hereinafter refers only to the adult plaintiffs. The facility in question shall be referred to as "the site." "Movants" shall refer to defendants AT & T and AT & T Nassau.)

### DISCUSSION:

#### I. STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added).

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case

---

1. The negligence count is labelled Count IV in plaintiffs' amended complaint. This is obviously a typographical error, as it is the sixth count pled, so we will refer to it as Count VI. The same is true of Counts VII, VIII, IX, X, and XI, which were erroneously labelled Counts V, VI, VII, VIII and IX respectively.

2. Plaintiffs' amended complaint, record document no. 33.

with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra* at 323 and 325, 106 S.Ct. at 2552–53 and 2553–54.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

In addition to the foregoing principles of summary judgment, we have previously issued an order which read in part as follows:

> 6. All motions for summary judgment or partial summary judgment shall be accompanied by appendi[c]es containing documents cited in support of the party's position. All references in supporting or opposing briefs shall be supported by a reference stating *the exact location* in the supporting appendices where the information may be found. Failure to comply with this requirement will result in the court deeming the point cited unsupported by evidence in the record, a consideration the court will weigh accordingly in deciding whether to grant or deny the motion in question.

Order # 2 dated September 29, 1992, at 2–3 ¶ 6 (record document no. 381).

## II. MATERIAL FACTS NOT GENUINELY IN DISPUTE

The following facts have either been admitted by plaintiffs or have not been shown to be genuinely in dispute as outlined above:

1. Plaintiffs filed their complaint on August 31, 1989.

2. Lurgan ceased operations at the site in or about 1978.

3. C & D ceased operations at the site, at the latest, in early 1984.

4. Between the late 1970's and late 1984 or early 1985, plaintiffs observed the burning and chain-sawing of toxic materials.

5. The burning was observed by each of the plaintiffs.

6. On one occasion, Sharon Rohrbach smelled smoke throughout her house, and thought that there was a fire in the electrical wiring.

7. On the same occasion, Sharon Rohrbach thought that "it was like dark waves of smoke were engulfing the house."

8. She drove to the site, and was certain that it was the source of the smoke because she saw dark smoke emanating from the site, "bellowing, bellowing, bellowing, like they were burning tires."

9. Sharon Rohrbach observed such smoke on a number of occasions, and the neighbors collectively complained to the local magistrate.

10. Gary Rohrbach also observed the smoke, though never on his own property.

11. Dean Oberst first observed smoke on his property in 1977 or 1978.

12. Dean Oberst believed that smoke and other particles had blown from the site onto his property, and he went to the site to complain to the operators.

13. Dean Oberst was told that burning at the site was done at night without afterburners, and he learned in the newspapers of the fires originated by the site.

14. During the time that Lurgan owned the site, Deborah Oberst observed smoke,

and family members would notify Lurgan that the smoke was causing problems.

15. Deborah Oberst tried to take pictures of the smoke and other activities at the site because she knew that if the smoke "cross[ed] the property boundaries," she could prove that the operators were involved in wrongful conduct.

16. Deborah Oberst believes that gray or dark gray flakes came onto her property from the site between 1979 and 1984.

17. Thomas Rock became so weak from the smell from the site in 1982 or 1983 that "I almost went down on my knees ..."

18. Prior to 1982 or 1983, Thomas Rock was awakened by smoke at night on approximately ten occasions, and thought that his house was on fire.

19. Thomas Rock took pictures of the site between 1979 and 1984 after "they found that there was contamination there."

20. Thomas Rock observed plastic, burned paper, particulate matter, or ash blowing onto his property while C & D operated the site, but not afterwards.

21. Thomas Rock first learned that there was "contamination" at the site in approximately 1984.

22. Thomas Rock observed a fire at the site which burned toward his property in 1979, and saw another fire at a later date.

23. Dorothy Rock smelled smoke coming from the site; the smell was worse after C & D took over the site.

24. Dorothy Rock testified that the smoke had a metallic smell, and that "the air would be filled with it."

25. Chester and Katherine Cenzar never saw any smoke, heard any noise, or experienced anything alarming relative to the site.

26. Chester and Katherine Cenzar were not aware of any interference with their property.

27. The Pennsylvania Department of Environmental Resources ("DER") issued citations to C & D in 1980, 1981, and 1983, due to complaints by consumers, including Sharon Rohrbach.

28. Dean Oberst had Deborah Oberst complain to EPA about the smoke and odors emanating from the site.

29. Thomas Rock complained to persons at C & D about the smoke and odors prior to 1984.

30. According to Thomas Rock, "In and around '82, around that time I used to take a shower, and I'd open my eyes, and the water would run through. Then all of a sudden, my eyes started burning."

31. Thomas Rock complained to EPA and DER about his water problems.

32. Dorothy Rock also complained to persons at Lurgan and C & D about the smoke.

33. Plaintiffs sent letters to local public interest groups and state senators expressing concern about burning at the site as early as 1981 and continuing through 1986.

34. Sharon Rohrbach testified that she knew of the dangers surrounding C & D at the time of the RSO hearing in May, 1984.

35. Gary Rohrbach testified that he first became aware of the hazards surrounding the site when DER started testing the water immediately following the RSO hearing in 1984, and that testimony at the hearing indicated that there could be problems for residents.

36. Thomas Rock testified that he heard, prior to the RSO hearing, that C & D shut down one of its wells because of water contamination.

37. Thomas Rock and Dorothy Rock first knew of problems at the site around the time of the RSO hearing in 1984, and found out about the contamination at the same time.

38. Chester Cenzar first noticed the C & D operations and became aware of possible ground water contamination at the time of the RSO hearing and when tests began to be performed.

39. Chester Cenzar attended some of the RSO hearings in 1984.

40. Katherine Cenzar was unaware of problems with the site until the RSO hearings, and then "everything started to come out."

41. Deborah Oberst testified that, at the time of the RSO hearing in the spring of 1984, she first became aware of possible ground water contamination at the site.

42. Between 1983 and 1985, tests on plaintiffs' groundwater, well-water, tapwater, and soil were performed by DER, EPA, and the Pennsylvania State University because of concerns about contamination, and all plaintiffs were aware of the potential contamination at that time.

43. Between 1983 and 1985, plaintiffs stopped drinking their well water and/or tapwater, and used bottled water or installed distillers for drinking purposes.

44. In 1984, Sharon Rohrbach, Gary Rohrbach, Deborah Oberst, and Ryan Oberst had blood tests performed because of their concerns about contamination from the site.

### III. POSITIONS OF THE PARTIES

According to movants, they are entitled to summary judgment because plaintiffs were aware of their injuries, or should have been aware of injuries, no later than 1985, and failed to file a complaint until 1989, well beyond the two-year statute of limitations. Plaintiffs contend that they were not aware that they had a cause of action until 1988. They also put forth a number of other theories under which the statute of limitations would be tolled.

### IV. PENNSYLVANIA LAW ON THE STATUTE OF LIMITATIONS AND ACCRUAL OF A CAUSE OF ACTION

The Pennsylvania statute of limitations governing the claims filed by plaintiffs reads as follows:

§ 5524. **Two year limitation**

The following actions and proceedings must be commenced within two years:

. . . . .

(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

. . . . .

(4) An action for waste or trespass of real property.

. . . . .

(7) Any other action or proceeding to recover damages for injury to person or property which is grounded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa.Cons.Stat.Ann. § 5524 (Supp.1993).

The statutory period of two years applies to negligence actions, whether the injury is personal, *Moore v. McComsey*, 313 Pa.Super. 264, 459 A.2d 841 (1983), or to property. *Argust v. Dick Mackey General Contracting Co., Inc.*, 390 Pa.Super. 183, 568 A.2d 255, *allocatur denied*, 527 Pa. 607, 590 A.2d 294 (1990) (table). *See also* § 5524(2). The general rule is that the limitations period begins to run when the negligence is done, *Moore, supra*, 459 A.2d at 844, i.e. upon the occurrence of the alleged breach of duty. *School District of the Borough of Aliquippa v. Md. Casualty Co.*, 402 Pa.Super. 569, 587 A.2d 765 (1991). If the harm is not apparent, the statute begins to run on the date that the plaintiff reasonably should have discovered the injury. *Manning v. Maloney*, 787 F.Supp. 433 (M.D.Pa.), *aff'd*, 980 F.2d 722 (3d Cir.1992) (table). An exception exists when some act of fraud or concealment is committed by the tortfeasor which prevents discovery of the injury or its cause. *See Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984).

The two-year statute of limitations and the "discovery rule" also apply to actions for: strict liability, *Merry v. Westinghouse Corp.*, 684 F.Supp. 852 (M.D.Pa.1988); nuisance, *Sustrik v. Jones & Laughlin Steel Corp.*, 413 Pa. 324, 197 A.2d 44 (1964); trespass, § 5524(4), *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468 (1983); intentional and negligent infliction of emotional distress, *Garvey v. Dickinson College*, 761 F.Supp. 1175, 1192 (M.D.Pa.1991) (negligent), *Johnson v. Provi-*

*dent National Bank,* 700 F.Supp. 817 (E.D.Pa.1988) (intentional).

Since plaintiffs filed their complaint on August 31, 1989, and the statute of limitations is two years for each of the state tort claims asserted by plaintiffs, the cause of action must have accrued prior to August 31, 1987, absent a reason for tolling the statute, for movants to be entitled to summary judgment on the issue.

■ There appear to be two tests applied by the Pennsylvania courts to determine when a cause of action sounding in tort accrues. The first is a three-prong test enunciated in *Anthony v. Koppers Co., Inc.,* 284 Pa.Super. 81, 425 A.2d 428 (1980) (adopting the test set forth in *Volpe v. Johns–Mansville Corp.,* 4 Phila. County Rep. 290 (1980)), *rev'd on other grounds,* 496 Pa. 119, 436 A.2d 181 (1981) (discovery rule does not apply to a wrongful death or survival action). Under the *Volpe* test, a cause of action accrues when plaintiff has: (1) knowledge of the injury; (2) knowledge of the operative cause of the injury; and (3) knowledge of the causative relationship between the injury and the operative conduct. *Anthony, supra,* 425 A.2d at 436.

A two-prong test was set forth by the court is *Cathcart, supra.* Under the *Cathcart* test, the statute of limitations is triggered when the plaintiff knew, or reasonably should have known, that: (1) he or she had been injured; and (2) his or her injury was caused by another's conduct. *Cathcart, supra,* 471 A.2d at 500 (also holding that *Volpe* test "unnecessarily complicates the question of when the statute begins to run.").

Both tests have been applied by the Pennsylvania Courts, although at least one court has noted that there appears to be little practical difference:

> We note that the second and third prongs of the test employed in *Anthony* appear to be implicit in the *Cathcart* formulation. Knowledge of (1) the operative cause of the injury and (2) the causal relationship between the injury and the operative conduct is the functional equivalent of knowledge that an injury has been caused by another's conduct. Thus, the argument over

which test to employ appears to be much ado about nothing.

*Carns v. Yingling,* 406 Pa.Super. 279, 594 A.2d 337, 340 n. 2 (1991).

■ Regardless of which test is applied, a court deciding when a cause of action accrued (or deciding that the accrual date is a question for the jury) looks at the conduct of the plaintiff to see if the plaintiff had sufficient information to be aware of his or her cause of action, or if the plaintiff acted reasonably to inform himself or herself of the cause of action.

> It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period. *Schaffer v. Larzelere,* 410 Pa. 402, 405, 189 A.2d 267, 269 (1963). "Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 84, 468 A.2d 468, 471 (1983).

*Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040, 1042 (1992).

■ Generally, whether the statute of limitations has run is a question of law for the court, but may be an issue for the jury if it involves a question of fact. *Hayward, supra,* 608 A.2d at 1043 (citation omitted). "... [O]nly where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." *Id.* (citation omitted). Thus, the conduct of the defendant is relevant only as it affects the conduct of the plaintiff. *Compare Hayward, supra* (jury could find that plaintiff was reasonable in failing to investigate cause of injury because of defendant doctor's assurances), with *Carns, supra* (statute triggered on medical malpractice for misdiagnosis when plaintiff was diagnosed properly by another doctor, and failure of patient to pinpoint exact cause of injury did not toll statute).

A case analogous to the instant case is *Merry, supra,* in which the owners of wells contaminated by toxic substances brought suit against the company which allegedly caused the contamination. The defendant company moved for summary judgment based upon the statute of limitations. The court quoted Restatement (2d) of Torts § 161, comment b, which reads:

> (b) Continuing trespass. The actor's failure to remove from land in the possession of another a thing which he has tortiously ... placed on the land constitutes a continuing trespass for the entire time during which the thing is on the land and ... confers on the possessor of the land an option to maintain a succession of actions based on a theory of continuing trespass or to treat the continuance of the thing on the land as an aggravation of the original trespass.

*Merry, supra,* 684 F.Supp. at 855. The court then noted that the rule of comment b applies to claims for continuing nuisance, citing Restatement (2d) of Torts § 899, comment d. *Id.*

## V. APPLICATION OF LAW TO THE FACTS

In reviewing the facts set forth above, it is clear that plaintiffs were aware that toxic substances were being handled at the site (including burning of the chemicals), and that those chemicals might well be in the air, on the ground, in the soil, and in the water around the plaintiffs' properties. Plaintiffs claimed to have physical complaints, and attributed the problems to the activities at the site. All of these facts were within the knowledge of plaintiffs prior to 1986. Reasonable minds cannot differ on the question of whether plaintiffs had all of the necessary information to trigger the statute of limitations on their claims of negligence, negligent and intentional infliction of emotional distress, and strict liability. The statute began to run well before August 31, 1987, and so these claims by plaintiffs are time-barred.

■ Plaintiffs' primary argument in this regard is that they did not know that they actually had a cause of action. Whether plaintiffs were able to draw this legal conclusion is not relevant; all that they need to know are the facts which would support a suit, and these they clearly had within their knowledge.

■ Plaintiffs also contend that the period of the statute of limitations should be tolled because of some conspiracy by movants to conceal information from plaintiffs. No evidence has been provided or cited specifically by plaintiffs to support this contention, and a theory of estoppel fails for the same reason.

■ As to the claims for trespass and nuisance, the court is without information to reach a conclusion. Movants point to the affidavit of James A. Perazzo, appended to their Brief in Support of All Six Motions for Partial Summary Judgment, at 15–16, ¶ 30; at 32, ¶ 71. The problem with this evidence is that no time frame is provided: it may well be that, as of the date of Mr. Perazzo's affidavit, the levels of selenium and arsenic were within the naturally occurring ranges. However, the affidavit does not substantiate a claim that the levels of selenium and arsenic were within the naturally occurring ranges as of August 31, 1987, so that there was no further discharge onto the surrounding properties, i.e. no continuing trespass or continuing nuisance.

\*   \*   \*

For the foregoing reasons, the motion for partial summary judgment dismissing plaintiffs' state-law claims as time-barred will be granted in part and denied in part. An appropriate order shall issue.

### ORDER (# 2)

For the reasons stated in the accompanying memorandum,

**IT IS ORDERED THAT:**

1. The motion (record document no. 411) for partial summary judgment dismissing plaintiff's state-law claims as time-barred is granted in part and denied in part.

(a) Count VI of the amended complaint (identified in error as Count Four) alleging a cause of action in negligence is dismissed as time-barred.

(b) Count VII of the amended complaint (identified in error as Count Five) alleging a cause of action in strict liability is dismissed as time-barred.

(c) The motion for partial summary judgment is denied as to Count VIII of the amended complaint (identified in error as Count Six) alleging a cause of action in nuisance.

(d) The motion for partial summary judgment is denied as to Count IX of the amended complaint (identified in error as Count Seven) alleging a cause of action in trespass.

(e) Count X of the amended complaint (identified in error as Count Eight) alleging a cause of action for intentional infliction of mental and emotional distress and injury is dismissed as time-barred.

(f) Count XI of the amended complaint (identified in error as Count Nine) alleging a cause of action for negligent infliction of mental and emotional distress and injury is dismissed as time-barred.

2. Our order of March 1, 1994, concerning filing of documents and contact with the court remains in effect pending further order of court.