507 A.2d 839

**Ruth Tobin-Cowan HELD, an Individual, Appellant,**

**v.**

**Burton H. NEFT, M.D., an Individual, Raymond J. Boylan, M.D., an Individual, Pittsburgh Anesthesia Associates, Ltd., a Professional Corporation and Central Medical Health Services, a Corporation, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1985.

Filed April 3, 1986.

196

John T. Tierney, III, Pittsburgh, for appellant.

Kenneth J. Nolan, Pittsburgh, for Neft, appellee.

Lynn E. Bell, Pittsburgh, for Boylan, appellee.

Louis C. Long, Pittsburgh, for Central Medical, appellee.

Before CAVANAUGH, JOHNSON and WATKINS, JJ.

CAVANAUGH, Judge:

In this case, appellant, Ruth Cowan Held contends that the lower court erred in granting summary judgment in favor of the appellees. The judgment was entered by the Honorable Martin Wekselman of the Court of Common Pleas of Allegheny County on the ground that the statute of limitations barred Held's claim. We agree.

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b).

> In addition, we are mindful that in considering a motion for summary judgment the court must examine the record in the light most favorable to the non-moving party; that the court's function is not to decide issues of fact but merely to determine whether any such issues exist; and that all doubts as to the existence of a genuine issue of material fact must be resolved in favor of the non-moving party.... We also note that 'ordinarily most questions relating to the applicability of the defense of the statute of limitations are questions of fact to be determined by the jury'.... Specifically, the question of whether a plaintiff has exercised due diligence in discovering the incidence of his injury is usually a jury question.... 'Whether the statute has run on a claim is usually a question of law for the judge, but where, as here, the issue involves a factual determination, i.e. what is a reasonable period, the determination is for the jury.'

This is not to say that there are not instances where summary judgment may be ordered in malpractice actions based upon a statute of limitations defense. Entry of summary judgment is proper where the plaintiff fails to plead facts sufficient to toll the statute, ... or admits facts sufficient to admit the limitations defense.... or fails in his response, by affidavits, or as otherwise provided, to set forth facts showing that there is a genuine issue for trial, Pa.R.C.P. No. 1035(d), or where the evidence relied upon by the plaintiff is inherently incredible . . .

*Taylor v. Tukanowicz*, 290 Pa.Super. 581, 435 A.2d 181 (1981) (citation omitted).

On December 14, 1979, Ruth Held was surgically treated for the revision of scars which were the result of an automobile accident. The anesthesiologist involved, Dr. Boylan, placed an intravenous solution into her left hand. Held noticed that the intravenous was not running properly and had to be stopped and restarted. She found this procedure to be very painful. Although she was discharged the next day, Held phoned the hospital the following week and spoke with an anesthesiologist about the pain in her arm. Dr. Boylan wrote on Held's record that the phlebitis which caused the pain was due to the medication. This notation was dated December 21, 1979. At another part of her record, Boylan also wrote that the pain was "most likely" due to the irritating effects of the medication. Although Held's brief does not question the authenticity of these notations, she contends that this information was *not* conveyed to her on December 21, 1979, or at anytime thereafter. According to Held, the intense, throbbing type of pain, redness, and tenderness in her arm lasted approximately two months before slowly subsiding. She claims that her arm is now weak where once it had been strong. She further contends that the physician who administered post-operative check-ups, Dr. Neft, told her that the injury to her arm was occasioned by the intravenous needle which had been poked into her hand several times, and that such a

thing happens after surgery. Held claims that in fact the injury was caused by the irritating effects of the medicine infused into her system from the intravenous line, but that Dr. Neft did not tell her that.

Ms. Held asserts that she left Dr. Neft's care in May of 1980, and alleges that she had no cause to seek further medical care at that time because the phlebitis had subsided. She alleges that it was not until sometime in 1982 that she learned that it was *not* the needle which had caused the inflammation in her arm, but that it was the medication. No cause of action was brought by Held until December of 1982.

■ It is undisputed that the two year statute of limitations is applicable to the within matter. *See* 42 Pa.C.S. § 5524. We are asked to decide whether under the discovery rule the statute did not commence running at the time of the injury. "An exception to this [two year statute of] limitation[s] has been articulated by our courts in medical malpractice cases where very often the patient (and prospective plaintiff) has no reason to believe that he has suffered an injury caused by the administration of a physician's treatment." *DeMartino v. Albert Einstein Medical Center, Northern Division*, 313 Pa.Super. 492, 498, 460 A.2d 295, 298 (1983). "The 'discovery rule' concept is premised on the concept that where the existence of an injury cannot be reasonably ascertained, the statute of limitations does not begin to run until such time as the injury's existence is known or discovered, or becomes knowable or discoverable by the exercise of reasonable diligence." *Petri v. Smith*, 307 Pa.Super. 261, 453 A.2d 342 (1982). The case which first applied this rule was *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959) where our Supreme Court wrote that an "injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." The now settled delineation of this rule is as follows: "[T]he statute commences when the medical malpractice plaintiff has knowledge or (and this is crucial to the determination) through the exercise of

reasonable diligence should have had knowledge of: (1) his injury; (2) the operative cause of his injury; and, (3) the causative relationship between his injury and the operative conduct." *DeMartino v. Albert Einstein Medical Center, Northern District*, 313 Pa.Super. at 500, 460 A.2d at 299. Knowledge of the *negligence* is not a part of the discovery rule. *Id.*

In appellant's brief, she contends that the second and third prongs of the test set forth in *DeMartino, supra,* have not been satisfied, and that the statute of limitations should not have precluded her claim.

First, appellant alleges that she lacked knowledge, and had no reason to know, of the *operative cause* of the injury. She states that it was her belief that the phlebitis was the result of the intravenous needle being poked into her arm several times while, in reality, the true operative cause was the *medication* which was intravenously filtered into her body. We note that appellant's amended complaint differs significantly from this conclusion in that it does not single out the medication as the sole cause of the injury.

Moreover, although appellant argues that she was un-aware of the cause of her injury, she was clearly aware that the injury was caused by the intravenous procedure administered to her on December 14, 1979. A lay person is not reasonably expected to know the precise medical cause of such an injury even though he knows that the injury was occasioned by a discrete medical procedure. It is reasonable to expect an injured person to pursue professional advice. In the instant case, appellant alleges that she sought professional advice and was misled by it. She asserts that she reasonably believed that the cause of her injury was the needle's repeated insertion into her arm, not the medication transmitted through the intravenous tube. She contends that the following made this belief reasonable: Dr. Neft's comments to her that the injury was the result of the needle being poked in her arm, that the injury was just temporary, and that it was nothing to worry about; more-over, Held noticed her vein becoming irritated when the

needle was repeatedly poked into her arm during the surgery; and, Held's prior experience with thrombophlebitis in her leg following a previous surgery was not caused by intravenous medication.

The cause of her injury was objectively discoverable in December of 1979. (Dr. Boylan had indicated the true cause on Held's record at that time.) However, if as Held contends, she was given assurances by a physician whom she trusted that the cause was the needle and that it was only temporary, such assurance could toll the running of the statute. Because of the procedural posture of this case, we must believe Held when she states that Dr. Neft told her the cause of the injury was the needle not the medication, and that it was temporary. We note, however, that Held left Dr. Neft's care in May of 1980, having lost confidence in his professional ability. Pertinent portions of her deposition are as follows:

Q. Did you tell him [Dr. Neft] you were dissatisfied with his treatment of you?

A. I inquired with him what had happened, and I was just told not to worry about it, it would go away.
. . . .

Q. I take it at some point you decided not to see Dr. Neft about the condition?

A. I decided not to see Dr. Neft period.

Q. When was that?

A. I don't remember the exact date. ... [A]fter that [last] visit I decided I didn't need this person. I decided he was not a very good surgeon.

Q. What was it that happened that made you feel you didn't want to see Dr. Neft anymore?

[Plaintiff's Counsel]: You are referring to the nose surgery and the—both surgeries?

The witness: It does relate to the nose surgery because it was also at that time that it was past the time period where he said wait six months, the nose swelling will go down, sometimes it takes a year, and by that time it was a year. So then I just went to another doctor and

he told me the good news, I am never going to have it repaired. And after having several pat-on-the head type responses from Neft, instead of getting don't worry about it, it will be all right, we'll take care of it later, I finally decided this man doesn't have my best interests at heart and I'm not going to go back to him.

Although the chief precipitating cause of Held's decision to seek another physician's care in place of Dr. Neft was the manner in which he treated a *different* injury, Held's deposition, above, indicates a general dissatisfaction with Dr. Neft's overall treatment of her.

This court has written that "[a]ssurances given by a physician which lull a patient into a false sense of security act as 'concealment' and toll the statute." *DeMartino, supra.* In *Barshady v. Schlosser,* 226 Pa.Super. 260, 313 A.2d 296 (1973), the appellant's reliance on her physician's assurance that her injury was temporary was reasonable because appellant had "absolute confidence in his judgment...." Applying these principles to the instant case, we find that even if Dr. Neft's initial assurance to Held (that the injury was caused by the needle and that this sort of thing happens after surgery) can be characterized as a "concealment" which served to toll the statute of limitations, the statute nevertheless began to run from the time Held lost confidence in Dr. Neft in May, 1980. *See Barshady, supra.* Since no action was brought until December, 1982, Held's claim is barred by the statute of limitations.

Appellant had lost confidence in Dr. Neft because she believed that he regarded her ailments too lightly. Yet, she maintains that she was justified in relying upon his advice that her injury was caused by the needle, and that she should not worry about it. We find such reliance unreasonable. "[R]eliance upon the word of one physician when the patient's own common sense should lead one to a different conclusion is unreasonable." *DeMartino v. Albert Einstein Medical Ctr. N.D.,* 313 Pa.Super. 492, 506, 460 A.2d 295, 302 (1983). We must insist that those who assert

claims of negligence be vigilant in bringing actions based thereon. The statute of limitations demands nothing less.

Held also asserts that her own experiences (i.e., a prior injury and the actual poking of the needle during the surgery) led her to reasonably believe that the cause of her injury was the needle and not the medication. This does not alter our holding. We note that Held had called the hospital one week after the surgery and spoke with an anesthesiologist about the pain in her arm. Moreover, she raised the question of the pain in her arm with Dr. Neft more than once. The fact that Held sought professional advice concerning the pain indicates that she did not choose to rely upon her own subjective knowledge of its cause. We believe this was a reasonable decision. Having lost confidence in her own doctor's ability to treat her in May of 1980, we believe that the proper course for her would have been to exercise diligence at that time and seek further professional advice to ascertain the true cause of her injury. Furthermore, in her brief, Held states that her previous bout of thrombophlebitis in her leg responded to treatment within one to two weeks. This is different from the instant ailment which did not slowly subside until two months after its onset. In addition, Held asserts that her arm is now weak where once it had been strong. This raises questions about the reasonableness of the appellant's reliance on her prior bout of phlebitis to guide her in the latest ailment.

Held does not aver that she *could not* learn of the true cause of her injury from May of 1980 on. In fact, the injury *could* have been discovered in May of 1980. On December 21, 1979, as was stated before, Doctor Boylan wrote on Held's chart that the phlebitis which caused the pain was *due to the medication.* Although Held asserts that this information was not conveyed to her at that time, her brief does not dispute the authenticity of the notation. The chart clearly indicates that the cause of her injury was objectively discoverable in December of 1979.

Moreover, Held claims that when she left Dr. Neft's care in May of 1980, the phlebitis had subsided and she did

not have cause to seek medical attention concerning it at that time. We believe that the statute should run nonetheless. The statute is not tolled merely because an injury is less intense than it once was. Such a holding would wreak havoc on the purposes behind the statute of limitations.

The law allowed Held two full years after she left Dr. Neft's care in May of 1980 in which to investigate and to bring an action. However, it was not until December 13, 1982 that Held filed a praecipe for writ of summons. Because this was some six or seven months beyond the statutory period, we are constrained to hold that her claim is barred.

We further hold that in the exercise of reasonable diligence, Held should have had knowledge of the causative relationship between her injury and the operative conduct. We adopt the analysis espoused, *supra*, as it addresses this contention as well.

Judgment affirmed.