**Bailey v. Abbott**

104

C.P. of Mercer County, no. 1999-1171.

*William J. Schenck,* for plaintiff.
*Wallace J. Knox II,* for defendant.

DOBSON, *J.,* January 12, 2001—The matter before this court for disposition is defendant Bruce Abbott D.P.M.'s motion for summary judgment. For the reasons set forth, Dr. Abbott's motion will be denied.

Pennsylvania Rule of Civil Procedure 1035.2 provides that any party may move for summary judgment in whole or in part as a matter of law:

"(1) whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury." Pa.R.C.P. 1035.2.

A court may grant a motion for summary judgment only where the right is clear and free from doubt. *Marks v. Tasman,* 527 Pa. 132, 134-35, 589 A.2d 205, 206 (1991). "The record must be viewed in the light most favorable to the non-moving party, and all doubts as to

the existence of a genuine issue of material fact must be resolved against the moving party." *Id.* at 135, 589 A.2d at 206.

The non-moving party "must adduce sufficient evidence on [all] issue[s] essential to his case on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ertel v. Patriot-News Co.,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996), *cert. denied,* 519 U.S. 1008 (1996).

Viewed in the light most favorable to the non-moving party, the facts are summarized as follows: plaintiff Sally Bailey consulted with Dr. Abbott regarding a bunion deformity on her left foot. Dr. Abbott recommended surgery. Dr. Abbott performed a crescentic bunionectomy with akin osteotomy surgery on Bailey's left foot on March 8, 1996. Following the surgery, Bailey began experiencing pain and swelling in her left leg. Bailey consulted with Dr. Abbott on numerous occasions following the surgery for these symptoms, and Dr. Abbott continued to assure Bailey that the surgery was successful and that her symptoms were due to normal healing and excessive use of her leg. Bailey last visited Dr. Abbott on June 10, 1996.

Plaintiff consulted with her primary care physician, Dr. John Hatzentonis on June 14, 1996 regarding the continued swelling of her left leg. Dr. Hatzentonis ordered x-rays along with an ultrasound. Bailey was ad-

mitted to the hospital for anticoagulation therapy for a blood clot. Bailey was discharged from the hospital on June 21, 1996. During her time in the hospital Bailey was told that she had a blood clot, but there was no explanation as to the causation of the clot nor was she told that there was any connection between the blood clot and the bunionectomy surgery.

Bailey was admitted to the hospital a second time on July 7, 1996, after complaining of chest pain. She was diagnosed with having pulmonary embolism. She was discharged from the hospital on July 13, 1996. Again, Bailey was not told that there was a connection between the pulmonary embolism and the bunionectomy.

On April 23, 1997 Bailey visited Dr. John Young because she did not have any relief from the continued swelling of her leg. Dr. Young explained to Bailey that Dr. Abbott may have been at fault in performing the surgery and that Dr. Abbott could have done something both prior to and following the surgery to prevent the problems with the blood clots from occurring. Dr Young informed Bailey that inactivity created blood clots and that any surgeon that has a patient with a history of blood clots, as she had, should place that patient on a blood thinner prior to surgery for preventative measures. Bailey sought legal advice on February 8, 1999 and the present medical malpractice action was initiated on April 22, 1999. Dr. Abbott alleges that the statue of limitations had expired prior to Bailey filing this action and summary judgment should be entered in his favor.

In Pennsylvania, the statute of limitations for medical malpractice actions is two years. 42 Pa.C.S.

§5524(2) (West 1999). The statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations. *Dalrymple v. Brown*, 549 Pa. 217, 223, 701 A.2d 164, 167 (1997). Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute of limitations. *Pocono International Raceway Inc. v. Pocono Produce Inc.*, 503 Pa. 80, 85, 468 A.2d 468, 471 (1983).

The "discovery rule" is an exception to the general rule that once the statutory period has expired, the party is barred from bringing suit. *Murphy v. Saavedra*, 560 Pa. 423, 426, 746 A.2d 92, 94 (2000). The discovery rule provides that where the existence of the injury is not known to the complaining party, and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. *Id.* Under the discovery rule, the statute of limitations begins to run when "the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Haggart v. Cho*, 703 A.2d 522, 526 (Pa. Super. 1997).

The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence.

*Dalrymple,* 549 Pa. at 224, 701 A.2d at 167. The standard of reasonable diligence is objective, not subjective. *Id.* It is not a standard of reasonable diligence unique to a particular plaintiff, but instead, a standard of reasonable diligence as applied to a "reasonable person." *Id.*

Pennsylvania has also developed the doctrine of fraudulent concealment. If, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statutory limitation of the action. *Schaffer v. Larzelere,* 410 Pa. 402, 405, 189 A.2d 267, 269 (1963). Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, defendant need not have acted with an intent to deceive; unintentional fraud or concealment is sufficient. *Colonna v. Rice,* 445 Pa. Super. 1, 9, 664 A.2d 979, 982 (1995). Mere mistake, misunderstanding or lack of knowledge, however, is insufficient. *Id.*

An injury which is initially discovered, but is not appreciated as such because of assurances by a physician that the injury will be completely remedied in time, will toll the statute of limitations. *Stein v. Richardson,* 302 Pa. Super. 124, 135, 448 A.2d 558, 563 (1982). However, reliance upon the word of one physician when the patient's own common sense should lead one to a different conclusion is unreasonable. *DeMartino v. Albert Einstein Medical Ctr.,* 313 Pa. Super. 492, 506, 460 A.2d 295, 302 (1983). The burden on proving the exis-

tence of such fraud or concealment is upon the asserting party by evidence that is clear, precise and convincing. *Colonna,* 445 Pa. Super. at 9, 664 A.2d at 982.

Dr. Abbott performed Bailey's bunionectomy surgery on March 8, 1996. Following the surgery, Bailey developed swelling in her leg and continued to consult with Dr. Abbott for these symptoms. Dr. Abbott assured Bailey that the surgery was successful and that her symptoms were due to normal healing and excessive use of her leg. Shortly following her last visit with Dr. Abbott, Bailey was admitted to the hospital on two different occasions for blood clots and a pulmonary embolism. At no time during her hospitalization was Bailey informed of any connection between either the blood clot or the pulmonary embolism and the bunionectomy performed by Dr. Abbott.

Bailey asserts that although she did assume that her problems with the pain and swelling were related to the bunionectomy surgery, it was not until her visit with Dr. Young on April 23, 1997 that she suspected Dr. Abbott had done anything wrong during the surgery. Bailey claims she did not suspect Dr. Abbott had done anything wrong prior to meeting with Dr. Young because Dr. Abbott told her that some people heal quicker than others and that it could take over a year for all of the swelling to go down. Bailey considered her symptoms to be a matter of healing.

This court believes that there is sufficient evidence to support a finding that it was not reasonably possible for Bailey to discover her injuries at the time of Dr.

Abbott's surgery or immediately thereafter. Therefore, a jury could find that the statute of limitations was tolled under the discovery rule. Moreover, the court believes that a jury could find that the statute of limitation, based on the assurances given to Bailey by Dr. Abbott, was also tolled under the doctrine of fraudulent concealment.

Having concluded that the statute of limitations was tolled, the court must determine how long Bailey was entitled to the continued benefits of tolling. "Whether the statute of limitations is tolled because of the discovery rule or the doctrine of fraudulent concealment, it begins to run as soon as the plaintiff, exercising reasonable diligence, knew or should have known of the injury and its cause." *Bohus v. Beloff,* 950 F.2d 919 (3d Cir. 1991). See also, *Crouse v. Cyclops Industries,* 560 Pa. 394, 404, 745 A.2d 606, 611 (2000) (under the discovery rule, the statute of limitations is tolled until the point where the complaining party knows or reasonably should know that he has been injured, and that his injury has been caused by another party's conduct); *Dudley v. W.C.A.B. (Township of Marple),* 80 Pa. Commw. 233, 471 A.2d 169, 173 (1984) (where statements made by a defendant lull a claimant into a false sense of security, those statements, whether intentional or unintentional, toll the running of the limitation period. That period reasonably should not begin until the claimant knows, or with reasonable diligence could know, of his deception).

Dr. Abbott performed the bunionectomy surgery on Bailey on March 8, 1996. Throughout the time follow-

ing the surgery, Bailey continued to suffer from pain and swelling of her left leg. Bailey consulted with Dr. Abbott for aftercare on April 1, 1996, April 8, 1996, April 30, 1996, May 16, 1996, May 23, 1996, and June 10, 1996. During these consultations, Dr. Abbott assured Bailey that the bunionectomy surgery on March 8, 1996 was successful and that her symptoms were due to normal healing and the excessive use of her leg. Bailey's last visit with Dr. Abbott was on June 10, 1996.

Bailey continued to suffer from pain and swelling of her leg following her visits with Dr. Abbott. On June 14, 1996 Bailey consulted with Dr. Hatzentonis, her primary care physician, concerning the swelling. Dr. Hatzentonis ordered x-rays and an ultrasound of Bailey, diagnosing her as suffering from a blood clot and ordering Bailey to be hospitalized. Bailey admitted that she thought the swelling on June 14, 1996 was a result of the surgery because she had not had it prior to the surgery, but Bailey was neither told the cause of the blood clot nor that there was a relationship between the blood clot and the bunionectomy surgery. Bailey was released from the hospital on June 21, 1996.

Bailey returned to the hospital on July 7, 1996 and was diagnosed as having a pulmonary embolism. Again, Bailey thought that the pulmonary embolism was somehow related to the bunionectomy surgery, but none of her physicians told her that there was an association between the two. Bailey was discharged on July 13, 1996.

Bailey, in her deposition, asserted that the reason she believed there was a connection between the bunion-

ectomy surgery and the blood clot was based on representations made by Dr. Abbott. Bailey asserted that Dr. Abbott told her that "some people heal quicker than others . . . it could take a year, year and a half for all the swelling to go completely down . . . some people take a little longer." Bailey thought that based on Dr. Abbott's representations the continued swelling was just a matter of healing following the surgery and eventually the swelling would go down.

Although Bailey thought that the blood clot and pulmonary embolism were somehow related to her surgery, she did not suspect at any time prior to the time that she saw Dr. Young that Dr. Abbott may have done something improper in the surgery. Dr. Young informed Bailey that there were things that Dr. Abbott could have done before and after the surgery that might have prevented her problems from occurring. Dr. Young informed Bailey that immobility created blood clots, that she should have been placed on a blood thinner prior to the surgery and that she was more susceptible to blood clots because she had had one previously in 1985.

The evidence is not sufficient to show Bailey was unaware of her injury prior to April 23, 1997. However, it is sufficient to support a finding that she was not aware prior to that date that Dr. Abbott was the cause of her injuries.

During Bailey's hospital stays in June and July of 1996 nothing was said that should have awakened her suspicions or intensified her inquiry as to the source of the problems from which she was suffering. Bailey was given

no reason to doubt Dr. Abbott's prognosis by the physicians she consulted until April 1997, when Dr. Young suggested that Dr. Abbott had done something wrong in performing the surgery. In fact, Bailey consulted with a Dr. Towle from the Greenville Medical Center where Bailey's primary care physician, Dr. Hatzentonis, is associated prior to visiting with Dr. Young and Dr. Towle told Bailey that she was going to have to learn to live with the swelling.

The court believes that a jury could find that Bailey did everything reasonably possible to discover her injury and who caused it. Bailey sought additional medical opinions immediately after leaving Dr. Abbott's care, but none of the physicians ever told Bailey that there was a relationship between her blood clot and the bunionectomy surgery. There is also no uncontroverted written documentation detailing the true cause of Bailey's injury, which she could have discovered prior to her visit with Dr. Young. Therefore, there is no evidence to contradict Dr. Abbott's assurances to Bailey that her pain and swelling were due to overuse and just a matter of healing, and reliance on such assurances was reasonable.

In *Held v. Neft*, the Superior Court found that the plaintiff's reliance on the defendant physician's assurances became unreasonable as soon as the plaintiff lost confidence in the defendant's professional ability. *Held v. Neft*, 352 Pa. Super. 195, 201, 507 A.2d 839, 842 (1986). The *Held* court found that the plaintiff lost confidence in the defendant's professional ability because

the plaintiff discontinued treatments with the defendant, and the plaintiff decided that the defendant was not a very good surgeon. *Id.* at 201, 507 A.2d at 842. The plaintiff also decided that the defendant did not have plaintiff's best interest at heart. *Id.* at 202, 507 A.2d at 842.

In this case, there is no indication that Bailey lost confidence in Dr. Abbott's professional ability, other than the fact that she discontinued treatments with him. No facts have been presented as to Bailey's motivation in discontinuing treatment with Dr. Abbott and seeking treatment from other physicians. Furthermore, none of Bailey's physicians, with the exception of Dr. Young, brought to Bailey's attention the possible relationship between the blood clot and the bunionectomy surgery. Therefore, the court believes that a jury could find that Bailey was justified in relying on Dr. Abbott's assurances, and that there is sufficient evidence from which a jury could find that the cause of Bailey's injury was not discoverable prior to her visit with Dr. Young on April 23, 1997.

Under the discovery rule, the statute of limitations begins to run when the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct. *Haggart,* 703 A.2d at 526. In this case, Bailey, although she suffered from pain and swelling of her left leg immediately following her bunionectomy surgery, may not have known that she was injured. The court believes that had Bailey exercised reasonable diligence she should

have known that the pain and swelling to the leg were in fact injuries. The court, however, believes that Bailey did not know and, in reliance upon the assurances Dr. Abbott provided to Bailey in regards to her care, could not determine with reasonable diligence that Dr. Abbott caused Bailey's injuries.

In *Stein,* the Superior Court held that an injury that is initially discovered, but is not appreciated as such because of assurances by a physician that the injury will be completely remedied in time, will toll the statute of limitations. *Stein,* 302 Pa. Super. at 135, 448 A.2d at 563. The court believes that Dr. Abbott's assurances to Bailey caused her to relax her vigilance and deem that the pain and swelling she suffered from was just a matter of the healing process. The court also believes that Bailey's own common sense would not have led her to a different conclusion. Bailey had bunionectomy surgery performed on her left foot and it is reasonable to expect some pain and swelling following the surgery. Furthermore, Dr. Abbott told Bailey that such swelling could last for over a year.

Bailey, under the doctrine of fraudulent concealment, has the burden of proving that Dr. Abbott's fraud or concealment was clear, precise, and convincing. The court believes that a jury could find by clear, precise and convincing evidence that Bailey, in reliance on the assurances provided to her by Dr. Abbott, neither knew nor should have known the cause of her injuries prior to meeting with Dr. Young on April 23, 1997. Since Bailey filed suit within two years of that date, her action is not

barred by the statute of limtations. Therefore, considering the facts in light most favorable to the non-moving, party Dr. Abbott's motion for summary judgment will be denied.

Hence, this order:

## ORDER

And now, January 12, 2001, it is hereby ordered that defendant Bruce Abbott D.P.M.'s motion for summary judgment is denied.