J-S29001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MELISSA SEMINARA AND CARMELO SEMINARA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 3846 EDA 2017 |
| STUART DERSHAW, M.D. JOHN STACK, M.D. HOLY REDEEMER WOMEN'S CARE OF MONTGOMERY COUNTY AND HOLY REDEEMER HOSPITAL AND MEDICAL CENTER. | : | |

Appeal from the Order October 25, 2017
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  No. 2014-31546

BEFORE:   PANELLA, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 31, 2018**

Melissa and Carmelo Seminara appeal *pro se* from the order entered in the Montgomery County Court of Common Pleas, granting summary judgment in favor of Stuart Dershaw, M.D., John Stack, M.D., Holy Redeemer Women's Care of Montgomery County, and Holy Redeemer Hospital and Medical Center (collectively, Appellees). We affirm.

The relevant facts and procedural history of this case are as follows. On December 11, 2003, Mrs. Seminara underwent a cesarean section operation ("C-section") at Holy Redeemer Hospital and Medical Center. Mrs. Seminara consulted with various medical professionals following the surgery, complaining that she "didn't feel normal." The Seminaras' Amended

_____
* Former Justice specially assigned to the Superior Court.

Complaint, filed 7/20/15, at 9. Mrs. Seminara consulted with several doctors about her illness, which she claimed presented symptoms including: "TIA mini strokes, cerebral ischemia, brain injury, seizures, neuropathy, damage and impairment in and to various organs, heart arrhythmias, frequent infections, etc." *Id*., at 13. Mrs. Seminara eventually became convinced her ailments were due to a surgical sponge left inside of her body during her C-section, which doctors were unable to confirm even after several radiological scans and procedures.

On November 26, 2014, the Seminaras filed a *pro se* complaint asking for a judgment of $20,000,000.00 against Appellees, based on the allegation that a surgical sponge was left in Mrs. Seminara's body during the C-section. The Seminaras later filed an amended complaint, alleging negligence against each Appellee based on the alleged failure to remove the sponge following the operation, and for inadequate medical care thereafter. The amended complaint also included Mr. Seminara's loss of consortium claim. The Seminaras also filed identical certificates of merit as to each Appellee, which stated medical expert testimony was not necessary for prosecution of their claims, based on the doctrine of *res ipsa loquitur*.

Appellees filed preliminary objections, which were sustained as to the Seminaras' claims of defamation and wanton conduct. Appellees then filed answers and new matter. Following the discovery deadline, Appellees filed a motion for summary judgment, alleging the Seminaras' claims were barred by the statute of limitations, and that the Seminaras failed to set forth a *prima*

*facie* claim of medical malpractice. The court granted the motion, and dismissed the Seminaras' claims. The Seminaras filed a timely notice of appeal and complied with the dictates of Pa.R.A.P. 1925(b). This appeal is now before us.

The Seminaras primarily argue that material disputed facts exist as to whether the medical providers breached their duty of care. They assert Appellees acted in bad faith by withholding relevant discovery information, and thus sabotaging the Seminaras' claims. Nevertheless, they claim they provided sufficient evidence to show Appellees' negligence, and that under the doctrine of *res ipsa loquitor*, the Seminaras did not need to submit medical expert testimony to support their claims.

The Seminaras also dispute the court's finding that they failed to file their complaint within the statute of limitations. They claim they were unaware until 2012 of the surgical sponge left in Mrs. Seminara's body following her C-section. They request this Court vacate the trial court's order granting Appellees' motion for summary judgment, and remand for a trial. We decline to do so.

We review a challenge to the entry of summary judgment as follows.

[We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered.

- 3 -

> Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*E.R. Linde Constr. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa. Super. 2013) (citations omitted).

The statute of limitations for a medical malpractice action is two years. *See* 42 Pa.C.S.A. § 5524. The discovery rule may toll the statute of limitations where an injury or its cause is not known or reasonably knowable. *See Nicolaou v. Martin*, 153 A.3d 383, 389 (Pa. Super. 2016). However, the discovery rule will only toll the statute of limitations "until a plaintiff could reasonably discover the cause of his injury in cases where the connection between the injury and the conduct of another is not apparent." *Id*. (citations omitted).

> The purpose of the discovery rule has been to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured, so that he has essentially the same rights as those who have suffered such an injury.

*Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005) (citation omitted).

A medical malpractice claim sounding in negligence requires proof of the same elements as in an ordinary negligence claim. *K.H. ex rel. H.S. v. Kumar*, 122 A.3d 1080, 1093 (Pa. Super. 2015). "[T]o prevail in a medical

malpractice action, a plaintiff must establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and [that] the damages suffered were a direct result of the harm." *Id*. (citation omitted).

> Our courts have held that because the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson, a medical malpractice plaintiff generally must produce the opinion of a medical expert to demonstrate the elements of his cause of action.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 833 (Pa. Super. 2000) (citation and internal quotation marks omitted).

We have carefully reviewed the parties' briefs, the certified record, the relevant law, and the well-written opinion of the Honorable Richard P. Haaz, and we conclude the Seminaras' claims merit no relief. The trial court, in its February 8, 2018 opinion, thoroughly reviewed the Seminaras' claims presented on appeal. The opinion accurately and comprehensively disposes of those issues, with appropriate references to the record and without legal error. Therefore, we affirm on that basis. *See* Trial Court Opinion, dated 2/8/18, at 1-15.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/18

- 5 -

COURT OF COMMON PLEAS MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION

MELISSA SEMINARA and
CARMELO SEMINARA

      Plaintiffs

v.

STUART DERSHAW, M.D., JOHN STACK,
M.D., HOLY REDEEMER WOMENS CARE
OF MONTGOMERY COUNTY, and HOLY
REDEEMER HEALTH SYSTEM d/b/a HOLY
REDEEMER HOSPITAL AND MEDICAL
CENTER

      Defendants

No. 2014-31546

3846 EDA 2017

2014-31546-0088  2/9/2018 12:04 PM # 11650041
Rcpt#Z3325675 Fee:$0.00 Opinion
Main (Public)
MontCo Prothonolary

## OPINION

HAAZ, J.                                                          February 8, 2018

### INTRODUCTION AND BACKGROUND

Plaintiffs, Melissa Seminara (Mrs. Seminara) and Carmelo Seminara (Mr. Seminara), appeal this court's October 27, 2017 Amended Order granting Defendants' summary judgment motion and dismissing all claims against Defendants Stuart Dershaw, M.D., John Stack, M.D., Holy Redeemer Women's Care of Montgomery County (Holy Redeemer Women's Care), and Holy Redeemer Health System (Holy Redeemer).

Plaintiffs filed a *pro se* Complaint on November 26, 2014. Plaintiffs then filed an Amended Complaint on July 21, 2015 alleging that Defendants Stack and Dershaw, as agents of Defendants Holy Reedeemer Women's Care and Holy Redeemer, provided sub-standard medical care by failing to remove a surgical sponge following Mrs. Seminara's cesarean section on December 11, 2003 and by failing to provide adequate follow-up care. Plaintiff's Amended

1

Complaint alleges four counts of negligence, one against each of the named defendants. The Amended Complaint alleges that as a direct and proximate result of the sub-standard medical care provided by Defendants, Mrs. Seminara suffered from "injuries and disability including but not limited to [Transient Ischemic Attacks], cerebral ischemia, brain injury, seizures, neuropathy, damage and impairment in and to various organs, heart arrhythmias, frequent infections, etc." (Amended Complaint ¶ 4.2). The Amended Complaint also includes a claim of loss of consortium on behalf of Mr. Seminara. (Amended Complaint ¶ 3.13).

On June 12, 2015, Plaintiffs filed four certificates of merit regarding each of the four Defendants. All four of these certificates of merit state that "the expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant. I am basing my response on re[s] ipsa loquitur."

Defendants' preliminary objections to claims of defamation and "wanton" conduct in the Amended Complaint were sustained on December 3, 2015. On December 23, 2015, all four Defendants filed Answers and New Matters, with Holy Redeemer and Holy Redeemer Women's Care filing jointly. On June 28, 2016, the court entered an order setting a discovery deadline of January 1, 2017.

Defendants filed a motion for summary judgment on July 20, 2017. Plaintiffs filed a response to the motion on July 28, 2017. The court granted Defendants' motions for summary judgment on October 25, 2017. The court entered an amended order granting Defendants' motions and stating specifically that all claims against all Defendants were dismissed on October 27, 2017.

On November 17, 2017 Plaintiffs filed a notice of appeal to the Superior Court. On November 20, 2017 the court entered an order directing Plaintiffs to file a concise statement of

2

errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On December 7, 2017 Plaintiffs filed a statement of matters complained of on appeal setting forth the following issues:

Did the [trial court] err by giving absolutely no basis or reasoning for granting Summary Judgment for Defendant and dismissing case? Plaintiff is left with only option to try and cover every issue in Summary Judgment so that all non-documented questions/issues on this statement are not waived. Does it set a precedent against Plaintiff to grant waiver using a question not listed on their statement of issues?

Did the [trial court] err in dismissing this case for insufficient evidence where a preponderance of admissible and inferred evidence showed that Defendants left a foreign body sponge in Plaintiff Melissa Seminara during a C-section, especially where a Jury or layman would have concluded that? Was it an error in claiming Res Ipsa Loquitor could not be applied or that it should be dismissed because an expert witness was not furnished? The [trial court] erred, all requirements of Res Ipsa were met. It also meets the exception as it relates to the Discovery rule.

Did the [trial court] err in finding that there was no genuine issue as to any material fact for a jury to consider and that Defense was entitled to Judgment as a matter of law under PA Rule 1035.2? Was it error in dismissing this case for insufficient evidence where the Plaintiff established prima facie evidence? The trial court erred as a matter of fact by assuming Plaintiff Melissa Seminara was not injured due to Medical Malpractice and the negligence of Defendants, regardless of evidence and material fact in file along with a layman's ability to see the error and dismissing all claims. (Similar to above but covering separately prima facie).

Did the [trial court] err in granting Summary Judgment for Defense either without regard for or review of Plaintiffs Answer in Opposition to Motion for Summary Judgment and then Amended Order 2 days later to include it? Why wasn't a hearing scheduled?

Did the [trial court] err in granting Summary Judgment for Defense and ignoring Statute of Limitations Requirements, Statute of Repose and Discovery Rule as it applies to Foreign Bodies? Additionally, for failure to not recognize Plaintiffs continuing quest for treatment and diagnosis, despite doctors repeatedly diagnosing and undiagnosing her?

Did the [trial court] err in not allowing Plaintiff their due right to trial by Jury? The trial court erred by depriving them of their rights to an impartial hearing by a jury and Judge. Regardless of the minimal amount of Medical Malpractice claims allowed to go through in Montgomery County and much smaller amount with a fair chance at winning, Plaintiff is still entitled to a fair trial.

3

Did the [trial court] err and show prejudice against Pro se Plaintiff? Pro se Plaintiff was warned they had to meet all the requirements of the case and has done that but feels trial court granted Summary Judgment for Defense slighting the Plaintiff with the opportunity of presenting case to a jury. The trial court erred by denying same treatment, fairness and access to the legal system and jury trial that someone with an attorney would be ensured of.

Did the [trial court] err when it failed to adhere to the law of the case when it granted Summary Judgment in favor of the Defendants and against Plaintiffs on essentially all the same arguments the court had denied Preliminary Objections and Motions to Dismiss?

Did the [trial court] err in granting Defense Summary Judgment and overlook Defense's complete failure to cooperate and turn over requested Discovery and Documentation to Plaintiffs? The [trial court] erred by not finding Defendants violated the rules of the case and denying the Plaintiffs their right to Discovery and Documentation to be provided. It should also be noted that issue is taken to the fact that Order of Summary Judgment (first one) was given one day prior to the end of the 30-day period Plaintiff gave Defense for Documentation Production and Interrogatories before they stated Motion was to be filed. This had been after 3 requests (all of which were filed with court as well).

It is also Plaintiffs stance that court erred in allowing Defendants to not have to bear any weight of Burden of Proof when the law clearly states they should.

(Alterations in original).

## FACTUAL BACKGROUND

Mrs. Seminara underwent a cesarean section on December 11, 2003 which was performed by Defendant Dershaw of Holy Redeemer Women's Care at Holy Redeemer. (Amended Complaint ¶¶ 3.2, 3.4, 3.5; Mrs. Seminara Dep. at 22:11-14). Plaintiffs allege that Defendant Dershaw negligently failed to remove a surgical sponge and other surgical materials from Mrs. Seminara's body following the surgery. (Amended Complaint ¶ 3.3). Plaintiffs allege that Defendant Stack, also of Holy Redeemer Women's Care at Holy Redeemer, provided sub-standard medical care by delaying the procedure, causing it to be rushed, failing to employ proper "storage, handling, and counting of sponges, gauze and other surgical materials prior to

4

their use in cesarean surgery" and then providing subs-standard follow-up care. (Amended Complaint ¶¶ 2,3,4,5 of Negligence Count against Defendant Stack).

A few days after the surgery Mrs. Seminara noticed she was not recovering as expected. (Answer to Motion ¶ 20). Plaintiffs repeatedly insisted that "it didn't feel normal and [Mrs. Seminara] was not progressing positively or improving." (Amended Complaint ¶ 5 of Negligence Count against Defendant Dershaw). Mrs. Seminara testified that "in the beginning . . . my husband was trying to figure out what went wrong." (Mrs. Seminara Dep. at 22:23-24).

On February 4, 2004, Mrs. Seminara underwent an MRI which she alleges showed a retained sponge in her abdomen. (Answer to Motion ¶ 28; Answer to Motion Ex. "B"). The radiologist at the time indicated to her that the MRI image was a tampon. (Mrs. Seminara Dep. at 49:6-11; 149:3-8). Mrs. Seminara stated she did not believe this because the object was not in the vaginal region, though it is unclear at what point she came to this conclusion. (Mrs. Seminara Dep. at 49:9-11).

On December 9, 2005, Plaintiffs filed a Writ of Summons against Defendants Holy Redeemer Women's Care and Holy Redeemer alleging medical malpractice. (Motion Ex. "F"). Mr. Seminara testified that this action was related to the allegedly sub-standard medical care that these Defendants provided during Mrs. Seminara's cesarean section in 2003. (Mr. Seminara Dep. at 93:6-9). Mr. Seminara also testified that Plaintiffs filed the Writ of Summons in 2005 to ensure their time to file a claim within the period prescribed by the applicable statute of limitations did not lapse. (Mr. Seminara Dep. at 92:13-20). Plaintiffs never filed a complaint in that action and a judgment of non pros was ultimately entered on April 10, 2006. (December term, 2005, Case No. 1038, Philadelphia Court of Common Pleas).

5

In January or February 2009, Mrs. Seminara observed a note from Dr. Michael Birbaum, a reproductive endocrinologist, to Dr. Reid-Fighera, a rheumatologist, suggesting she may have a retained sponge inside her abdomen. (Mrs. Seminara Dep. at 26:18-27:23; 30:6; 39:1-8; Motion Ex. "Z"). Plaintiff discussed this with Dr. Kaufman, her infectious disease physician, whom Plaintiff claims did not believe she had a retained sponge. (Mrs. Seminara Dep. at 39:20-24). Later in 2009 Mrs. Seminara's primary care physician, Dr. Douglas Kimmel, referred her to Dr. Ernest Rosato at the University of Pennsylvania to further investigate the possibility of a retained foreign body from the cesarean section. (*Id.* at 79:8-23). Plaintiff testified that after performing "one, maybe two scans" Dr. Rosato concluded that there was no foreign body in Mrs. Seminara. (*Id.* at 80:3-84:11).

Mrs. Seminara then consulted with another obstetrician-gynecologist, Dr. Saul Jeck, in 2010 as she pursued her investigation of a retained sponge. (*Id.* at 85:18-86:20). After performing some radiological studies, Dr. Jeck was unable to confirm the presence of a retained sponge. (*Id.* at 99:2-20).

In May 2010, Mrs. Seminara was evaluated by Dr. Ehab Akkary, a surgeon specializing in retained foreign bodies. (*Id.* at 101:4-102:24). Dr. Akkary evaluated Mrs. Seminara's prior radiological studies as well as a recent CT scan that was ordered for a suspected hemangioma. (Motion Ex. "Q," Dr. Akkary's post-operative report). On November 16, 2010, Dr. Akkary performed a laparoscopic exploratory surgery to remove the mass on the "posterior aspect of the right lobe of the liver" he suspected to be a hemangioma. *Id.* Dr. Akkary informed Mrs. Seminara that "this might not be a retained sponge, and that all of the studies are consistent with a hemangioma, however, if the hemangioma is symptomatic . . . and affecting her quality of life,

6

then it will be reasonable to excise it." *Id.* During the surgery Dr. Akkary cut a vein that was emerging from the mass and had to use surgical staples to stop the bleeding. *Id.*

The pathology report of the excised mass indicated that it was not a sponge. (Motion Ex. "R"; Mrs. Seminara Dep. at 130:17-133:15). Mrs. Seminara testified that Dr. Akkary later contradicted himself on this point, but there is nothing in the record to indicate that. (Mrs. Seminara Dep. at 130:17-20).

On March 8, 2011, Mrs. Seminara underwent surgery to remove her gall bladder which was performed by Dr. Luca Giordano. (Motion Ex. "T"). Surgical clips were used during this surgery and a follow-up CT scan performed on March 15, 2011 showed that these clips remained "along the posterior margin of the right hepatic lobe." (Motion Ex. "U").

On November 26, 2012, Mrs. Seminara underwent an exploratory laparotomy which was performed by Dr. Michael Wayne. (Motion Ex. "W"; Ex. "X"). Dr. Wayne's operative report indicates that he removed "staple material" and "metallic clips." (Motion Ex. "X"). The subsequent pathology report indicates that the material removed was soft tissue, the largest piece having staple material inside. (Motion Ex. "Y"). The final diagnosis in the pathology report indicates "[p]erihepatic foreign body; [f]ibroadipose tissue with staples and old hemorrhage." *Id.* Although Mrs. Seminara stated Dr. Wayne told her he found a sponge during a follow-up visit, this statement is not reflected in any of the records. (Mrs. Seminara Dep. at 215:1-216:21). Plaintiff filed the instant action on November 26, 2014.

**DISCUSSION**

A motion for summary judgment shall be granted if the documents of record show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1); *Bank of America, N.A. v. Gibson*, 102 A.3d 462, 465 (Pa.

7

Super. 2014). The court must restrict its review to material filed in support of and in opposition to the motion for summary judgment and to uncontroverted allegations in the pleadings. Pa.R.C.P. 1035.1; *Overly v. Kass*, 554 A.2d 970, 972 (Pa. Super. 1989). "Parties seeking to avoid the entry of summary judgment against them may not rest upon averments contained in their pleadings; rather, they are required to show, by depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial[.]" *Overly, supra*, 554 A.2d at 972. "[W]here the non-moving party fails to adduce sufficient evidence to establish the existence of an element essential to his case and on which he bears the burden of proof, then the moving party is entitled to judgment as a matter of law." *Ertel v. Patriot-News Co.*, 674 A.2d 1038, 1042 (Pa. 1996).

An action to recover damages for personal injuries has a two-year statute of limitations. 42 Pa.C.S.A. § 5524. "Generally, a cause of action first accrues when a party is injured," however, "[t]he discovery rule is a judicially created exception that tolls the running of the applicable statute of limitations when an injury or its cause was not known or reasonably knowable . . . If the injured party could not ascertain he was injured and by what cause within the limitations period, 'despite the exercise of reasonable diligence,' then the discovery rule is appropriate." *Nicolaou v. Martin*, 153 A.3d 383, 389 (Pa. Super. 2016) (quoting *Simon v. Wyeth Pharm, Inc.*, 989 A.2d 356, 365 (Pa. Super. 2009)). The burden is on the party invoking the discovery rule, in this case Plaintiffs, to show that they acted with reasonable diligence in determining the fact and cause of the injury but were unable to ascertain it. *Id.* "[T]here must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." *Id.* at 391 (quoting *Fine v. Checcio, D.D.S.*, 870 A.2d 850, 858 (Pa. 2005)). "[O]nce the plaintiff *becomes aware of the injury and*

8

*who occasioned it,* she is under a duty to investigate the matter and commence a cause of action." *Caro v. Glah,* 867 A.2d 531, 534 (Pa. Super. 2004) (quoting *Burton-Lister v. Sigel, Sivitz and Lebed Assoc.,* 798 A.2d 231, 237 (Pa. Super. 2002)) (emphasis in original).

Here, Plaintiffs did not commence a cause of action until November 26, 2014. Accordingly, it is necessary to examine the undisputed facts of record to determine if Mrs. Seminara could not ascertain she was injured and by what cause despite the exercise of due diligence before November 26, 2012. Mrs. Seminara claims she had no notice of the cause of her injury until the exploratory laparotomy performed by Dr. Wayne on November 26, 2012. This is belied by the undisputed facts of record. Mrs. Seminara alleges she was not recovering properly almost immediately after her 2003 cesarean section and suspected that Defendants had deviated from the standard of care. The pain in her abdomen was severe enough to cause her to undergo an MRI on February 4, 2004 to investigate her concern. Plaintiffs then filed a Writ of Summons in 2005 alleging medical malpractice which Mr. Seminara testified was related to the cesarean section.[1]   Plaintiffs were aware of the injury and had formed a belief that Defendants had caused it by 2005. Though Plaintiffs may not have known the exact cause of the injury, they commenced an action which allowed them to utilize discovery procedures to investigate further details. The discovery rule does not toll the statute of limitations all the way to the point where a plaintiff knows the precise medical cause of her injury. *Groover v. Riddle Mem'l Hosp.,* 516 A.2d 53, 57 (Pa. 1986).

In *Groover,* plaintiff received an injection in her right buttock while in the hospital sometime between March 25, 1979 and April 3, 1979. From the time of the injection plaintiff began to suffer pain and loss of control in her right leg. She consulted with various doctors over the next several years in an attempt to ascertain the problem with her leg. None of these doctors

---

[1] December term, 2005, Case No. 1038, Philadelphia Court of Common Pleas; *see also* Mr. Seminara Dep. at 93:6-9.

were able to diagnose the source of the problem. In June 1983, a doctor informed her that the pain in her leg was due to a sciatic nerve injury caused by the injection she received in 1979. On September 3, 1983, plaintiff filed suit against the hospital and the physician who applied the injection. The trial court granted summary judgment in favor of defendants finding that the claim was filed beyond the statute of limitations.

Plaintiff appealed and argued that the statute of limitations was tolled by the discovery rule on the grounds that various doctors were unable to identify the cause of her injury until June 1983. The superior court affirmed the trial court's grant of summary judgment finding that the statute of limitations began to accrue the day plaintiff received the painful debilitating injection. The superior court reasoned that plaintiff knew or reasonably should have known that she was injured and that the injury "was occasioned by a discrete medical procedure." *Id.* (quoting *Held v. Neft*, 507 A.2d 839, 841 (Pa. Super. 1986)).

Here, Mrs. Seminara began to investigate the specific possibility of a retained sponge related to her 2003 cesarean section in 2009. Mrs. Seminara reviewed a note in 2009 from Dr. Birbaum which suggested she may have a retained sponge. She then consulted with Dr. Kimmel, Dr. Kaufman and Dr. Rosato later in 2009 regarding her concern of a retained sponge. She consulted with Dr. Jeck and Dr. Akkary in 2010 about a retained sponge. These undisputed facts all occurred four or more years before she commenced suit in 2014 claiming negligence arising from a retained sponge from her 2003 cesarean section. Although Mrs. Seminara consulted with a number of doctors who informed her she did not have a retained sponge, the discovery rule did not toll the statute of limitations simply because Mrs. Seminara's subsequent treating physicians did not know the cause of her injuries. *See, e.g., Groover, supra,* 516 A.2d at 57. Mrs. Seminara may not have been certain of the exact foreign body allegedly in her abdomen by 2009, but she

10

did have knowledge of her injury, a belief as to the operative cause of her injury and a belief as to the causal relationship between her injury and the operative conduct. *See Bigansky v. Thomas Jefferson Univ. Hosp.*, 658 A.2d 423, 427 (Pa. 1995).

Plaintiffs filed the original complaint on November 26, 2014, almost eleven years after her cesarean section performed in 2003. The undisputed facts established she specifically investigated her belief regarding a retained foreign body in 2009 and 2010. Where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law." *Fine, supra*, 870 A.2d at 858. In the instant matter, the court properly found that Plaintiffs' claim was filed years beyond the statute of limitations as a matter of law and summary judgment in favor of Defendants was appropriate.

Additionally, the court finds in this case Plaintiffs were required to produce an expert report or testimony and that the lack of such an expert was fatal to their claim. "Medical malpractice consists of a negligent or unskillful performance by a physician of the duties which are devolved and incumbent upon him on account of his relations with his patients, or of a want of proper care and skill in the performance of a professional act." *Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1070 (Pa. 2006). Since medical malpractice is a form of negligence, Plaintiffs were required to demonstrate the elements of a negligence action: a duty owed by the physician to the patient, a breach of that duty, that the breach was the proximate cause of Plaintiffs' harm and that the damages suffered were a direct result of that harm. *Id.* Further, "[w]ith all but the most self-evident medical malpractice actions there is also the added requirement that plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation." *Id.* at 1070-71.

11

Here, Plaintiffs provided no such expert but claim that the doctrine of *res ipsa loquitor* applies in this case which would allow a jury to infer negligence from the circumstances surrounding the injury. *Res ipsa loquitor* is "a rule that provides that a plaintiff may satisfy his burden of producing evidence of a defendant's negligence by proving that he has been injured by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence." *Id.* at 1071. Its applicability is not precluded by the mere fact that the negligence is related to a medical problem. *Id.* at 1072. In this case, however, *res ipsa loquitor* is not applicable.

The Supreme Court has formulated the evidentiary doctrine of *res ipsa loquitor*, in pertinent part, as follows:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
>
> [*Id.* at 1071 (quoting *Restatement (Second) of Torts* § 328D).]

Ordinarily, a surgical sponge left in a patient would allow a fact-finder to infer negligence without the requirement of expert testimony. Mrs. Seminara consulted with many medical experts following her cesarean section. Those physicians could not agree that she had retained a foreign body from the procedure, or even that she had retained a foreign body at all. Her doctors disputed how to interpret the various radiological scans that she underwent. The pathology report following the November 26, 2012 surgery with Dr. Wayne did not indicate the

12

removed tissue was a surgical sponge. It is not "self-evident" that a sponge was left in Mrs. Seminara as a result of her 2003 procedure or whether the material extracted by Dr. Wayne was related to her 2003 cesarean section as opposed to Mrs. Seminara's 2010 surgery with Dr. Akkary or to her 2011 surgery to remove her gallbladder with Dr. Giordano. The determination of exactly what material was found and the necessary causal link between any retained foreign body and her 2003 cesarean section is not self-evident, requires expert testimony and cannot be reasonably inferred from the surrounding circumstances. This is especially true due to the passage of significant time and two subsequent surgeries to her abdominal region. Simply stated, other responsible causes, including the conduct of third parties, cannot be sufficiently eliminated by the circumstances without expert testimony. *Id. Res ipsa loquitor* does not apply to the factual record in this case.

Further, Plaintiffs are also required to present expert testimony to show the harm she suffered was a factual cause of the alleged retained foreign body from 2003. It is not self-evident that Mrs. Seminara's transient ischemic attacks, cerebral ischemia, brain injury, seizures, neuropathy, damage and impairment in and to various organs, heart arrhythmias, and frequent infections were causally related to any alleged negligence.[2] In a medical malpractice action expert testimony as to causation is required unless there is an "obvious causal relationship." *Grossman v. Barke*, 868 A.2d 561, 567 (Pa. Super. 2005) (quoting *Matthews v. Clarion Hosp.*, 742 A.2d 1111, 1112 (Pa. Super 1999)). "An obvious causal relationship exists where the injuries are either an 'immediate and direct' or the 'natural and probable' result of the alleged negligent act." *Id.* (quoting *Matthews, supra*, 742 A.2d at 1112). Here, the causal relationship between the harm Mrs. Seminara suffered and the alleged retained foreign body is not obvious and expert testimony was required to establish it.

---

[2] *See* Amended Complaint ¶ 4.2, setting forth the injuries she claims were caused by the retained sponge.

13

In *Grossman*, plaintiff was consulting with a physician to obtain a pre-examination for a knee replacement. Plaintiff was sixty-nine years old, just over five feet tall, weighed approximately 300 pounds and suffered from diabetes. At the time of the consultation plaintiff had sutures in her ankle from a previous surgical procedure. Plaintiff was sitting on the examination table as defendant left the room to get a suture removal kit when plaintiff became dizzy, fell from the table and fractured her pelvis. The fractured pelvis required several surgeries. Plaintiff suffered complications including a bacterial infection which ultimately required the removal of her hip. Plaintiff's medical expert testified that plaintiff's case was "one of basic negligence as opposed to medical malpractice." *Id.* at 564. The trial court granted defendant's motion for summary judgment because plaintiff did not present the requisite expert medical testimony to prove her claim of medical malpractice. Plaintiff appealed and the superior held that expert testimony was required to establish both a deviation from the standard of care and the causal relationship between plaintiff's injuries and the alleged negligence. *Id.* at 571.

The superior court found that the causal relationship between the harm suffered by plaintiff in *Grossman*, the fracture of plaintiff's pelvis and the bacterial infection leading to the eventual removal of plaintiff's hip, was neither "immediate and direct" nor the "natural and probable" result of the alleged negligent act. *Id.* The same is true here. A lay juror would require the aid of expert medical testimony to conclude that Mrs. Seminara's claimed injuries of transient ischemic attacks, cerebral ischemia, brain injury, seizures, neuropathy, damage and impairment in and to various organs, heart arrhythmias and frequent infections were caused by a retained surgical sponge or foreign body. Such a causal relationship, if one exists, is not obvious.

**CONCLUSION**

14

Accordingly, the court respectfully recommends that its October 27, 2017 Amended Order granting summary judgment in favor of Defendants be AFFIRMED.

BY THE COURT

_____

Richard P. Haaz,                                    J

Copies sent on 2/7/18 to:

Melissa Seminara, pro se
Carmelo Seminara, pro se
Amalia V. Romanowicz, Esquire
Albert Bryan Tomlinson, Esquire
Court Administration

_____

Secretary

15